UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

DR. ROBERT W. MALONE,

       Plaintiff,

v.

WP COMPANY LLC,
D/B/A THE WASHINGTON POST,

       Defendant.

Case No. 3:22-cv-00046

**MEMORANDUM OF LAW IN SUPPORT OF
<u>THE WASHINGTON POST'S MOTION TO DISMISS</u>**

WILLIAMS & CONNOLLY LLP

Thomas G. Hentoff (*pro hac vice* application filed)
Nicholas G. Gamse (*pro hac vice* application filed)
Perry F. Austin (VSB No. 93373)

680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
paustin@wc.com

*Counsel for WP Company LLC*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND .................................................................................................................3

    A.    Dr. Malone .........................................................................................................3

    B.    The Article at Issue .........................................................................................6

    C.    The Lawsuit ......................................................................................................7

LEGAL STANDARD ..........................................................................................................9

ARGUMENT ......................................................................................................................10

I.    The Complaint Fails To State a Claim for Defamation or Defamation by Implication. ......................................................................................................................10

    A.    The Challenged Statements Are Protected Opinion. ...........................................11

        1.    The Statements Are Protected Opinion Because Courts Cannot Resolve Medical or Scientific Disputes in Defamation Actions..............12

        2.    The Statements Are Not "Demonstrably False" Statements of Fact That Are Subject to "Objective Verification."...........................................15

    B.    Even if any of the Challenged Statements Were Capable of Verification, They Could Not Be Deemed Materially False. ....................................................17

    C.    The Complaint Fails to Plausibly Allege that the Post Published the Challenged Statements with Actual Malice. ........................................................19

        1.    Malone Is a Limited-Purpose Public Figure. ............................................20

        2.    The Complaint Fails to Plausibly Allege That the Post Published the Article with Actual Malice. ..................................................................23

        3.    The Complaint Fails to Plausibly Allege That the Post Republished the Article with Actual Malice. ..................................................................26

    D.    The Complaint Does Not Identify "Affirmative" Support on the Face of the Article to Plausibly Establish that the Publication "Intended or Endorsed" Any Allegedly Defamatory Inference.................................................27

II.    The Complaint Fails To State a Claim for Insulting Words. ...................................29

III.    The Post Is Immune from Suit Pursuant to Virginia Law. ..............................30

CONCLUSION.....................................................................................................31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arthur v. Offit*, 2010 WL 883745 (E.D. Va. Mar. 10, 2010) .................................................*passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................9

*Besen v. Parents & Friends of Ex-Gays, Inc.*,
   2012 WL 1440183 (E.D. Va. Apr. 25, 2012) ................................................................. 19, 20

*Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180 (4th Cir. 1998) .................................................15

*Brimelow v. N.Y. Times*, 2020 WL 7405261 (S.D.N.Y. Dec. 17, 2020) ........................................4

*CACI Premier Tech. v. Rhodes*, 536 F.3d 280 (4th Cir. 2008) ....................................................11

*Carr v. Forbes., Inc.*, 259 F.3d 273 (4th Cir. 2001) ...................................................................20

*Carter v. Dominion Energy, Inc.*, 529 F. Supp. 3d 525 (W.D. Va. 2021) ...................................30

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993) ...............................................*passim*

*Cheng v. Neumann*, --- F.4th ---, 2022 WL 14354608 (1st Cir. 2022) ........................................15

*Coleman v. Grand*, 2021 WL 768167 (E.D.N.Y. Feb. 26, 2021) ................................................15

*Edwards v. Schwartz,* 378 F. Supp. 3d 468 (W.D. Va. 2019) ...............................................*passim*

*Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581 (E.D. Va. 2020) ............................................30

*Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021) ...............................................................*passim*

*Faltas v. State Newspaper*, 928 F. Supp. 637 (D.S.C. 1996) ......................................................15

*Florio v. Gallaudet Univ.*, 2022 WL 2785972 (D.D.C. July 15, 2022) .......................................27

*Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541 (4th Cir. 1994) ..........................................20

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) .....................................................................20

*Gilmore v. Jones*, 370 F. Supp. 3d 630 (W.D. Va. 2019) .............................................. 20, 21, 22

*Goulmamine v. CVS Pharmacy*, 138 F. Supp. 3d 652 (E.D. Va. 2015) .......................................29

*Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995) ...................................................15

*Hall v. Virginia*, 385 F.3d 421 (4th Cir. 2004) ....................................................................... 4, 18

*Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657 (1989) .................................................. 27

*Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693 (D. Md. 2021) ................................ 27

*Harvey v. Cable News Network, Inc.*, 48 F.4th 257 (4th Cir. 2022) ...................................... *passim*

*Immanuel v. CNN*, 2022 WL 3030290 (S.D. Tex. Aug. 1, 2022) ......................................... *passim*

*Jackson v. Middle Peninsula N. Neck Cmty. Servs. Bd.*,
2017 WL 216701 (E.D. Va. Jan. 18, 2017) .......................................................................... 30

*Jenkins v. Snyder*, 2001 WL 755818 (E.D. Va. Feb. 6, 2001) ................................................... 28

*Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C. Cir. 1988) ................................ 24

*Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021) ....................................................................... 26

*Malone v. Breggin*, No. 3:22-cv-63 (W.D. Va. Oct. 30, 2022) ................................................. 6, 7

*Mayfield v. NASCAR*, 674 F.3d 369 (4th Cir. 2012)................................................. 20, 23, 25, 26

*McCafferty v. Newsweek Media Grp.*, 955 F.3d 352 (3d Cir. 2020) .......................................... 16

*McFarlane v. Esquire Mag.*, 74 F.3d 1296 (D.C. Cir. 1996) ...................................................... 25

*Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495 (D. Md. 2020)................................... 26

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) .................................................................. 11

*Mirafuentes v. Estevez*, 2015 WL 8177935 (E.D. Va. Nov. 30, 2015)....................................... 17

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)....................................................... 2, 19, 26, 27

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013) ......................... 12, 13

*Parsi v. Daioleslam*, 890 F. Supp. 2d 77 (D.D.C. 2012) ........................................................... 24

*Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*,
829 F.2d 1280 (4th Cir. 1987) ..................................................................................... 29, 30

*Project Veritas v. Stanford Univ.*, 2022 WL 1555047 (W.D. Wash. May 17, 2022)................... 15

*Stepp v. U.S. Bank N.A.*, 2018 WL 6625081 (W.D. Va. Dec. 18, 2018) ...................................... 4

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) .................... 17

*Virginia Citizens Def. League v. Couric*, 910 F.3d 780 (4th Cir. 2018)................................... 7, 9

*Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Va.*,
   685 F. App'x 277 (4th Cir. 2017) (per curiam) .................................................................4

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) ...........................................27

*Yiamouyiannis v. Consumers Union*, 619 F.2d 932 (2d Cir. 1980).............................................24

## STATE CASES

*Malone v. Twitter, Inc.*, 2022 WL 14835110 (Cal. Super. Sept. 28, 2022) ....................... 5, 21, 22

*Schaecher v. Bouffault*, 772 S.E.2d 589 (Va. 2015) ............................................................. 11, 12

## STATUTES

Va. Code Ann. § 8.01-45..............................................................................................................29

Va. Code Ann. § 8.01-223............................................................................................................30

## OTHER AUTHORITIES

*Disinformation*, *Oxford English Dictionary* (2022)....................................................................28

*Misinformation*, *Oxford English Dictionary* (2022) ..................................................................28

## INTRODUCTION

The Complaint alleges that Plaintiff Dr. Robert Malone is a "world-renowned" scientist and doctor who, as part of his "mission . . . to ensure vaccine safety," publicly espouses the contrarian view that "the so-called 'vaccines'" for coronavirus "do not work," which he says "is abundantly clear from both the scientific and anecdotal evidence to date." Compl. ¶¶ 1, 15.

As reported in the Washington Post article at issue in this case (the "Article"), Dr. Malone's public efforts to convey this message included a December 2021 appearance on the *Joe Rogan Experience* podcast heard by millions, as well as a January 2022 speech from the steps of the Lincoln Memorial at an "anti-vaccine and anti-mandate" demonstration called "Defeat the Mandates:  An American Homecoming."  Ex. A (online version); Ex. B (print version).  As quoted in the Article, during his speech Dr. Malone told the crowd of thousands that "[r]egarding the genetic covid vaccines, the science is settled. . . . They are not working."  Ex. A, at 1.  The Post covered the speech and published an Article the next day entitled "A vaccine scientist's discredited claims have bolstered a movement of misinformation."  *See* Compl. ¶ 1; Ex. A, at 1.  The Article explained that Dr. Malone's speech conflicted with prevailing medical guidance about the vaccines, including recent "studies based on real-world data" released by the U.S. government's Centers for Disease Control and Prevention ("CDC") "showing that coronavirus vaccines provide strong protection against hospitalization from the rapidly spreading omicron variant."  Ex. A, at 1.

In this case, Dr. Malone has sued the Post for defamation and related torts, claiming that he is entitled to $50 million in damages because the Post described his anti-vaccine message as "discredited," "misinformation," and a "public health risk."  Compl. ¶ 8.  His lawsuit is an affront to both the First Amendment and the CDC's vital medical guidance during a pandemic that killed more than one million Americans.  Pursuant to Rule 12(b)(6), the Complaint should be dismissed with prejudice for three independently sufficient reasons.

First, the Complaint fails to state a claim because the statements Dr. Malone challenges as false are in fact incapable of objective proof, and are therefore constitutionally protected, nonactionable opinion.  Indeed, there is a long line of cases holding that plaintiffs like Dr. Malone cannot recover in defamation for criticism of their views in an ongoing medical or scientific debate. As one Virginia federal court explained in dismissing a similar case involving another anti-vaccine advocate, the lawsuit "threatens to ensnare the Court in the thorny and extremely contentious debate over the perceived risks of certain vaccines, their theoretical association with particular diseases or syndromes, and, at bottom, which side of this debate has 'truth' on their side.  That is hardly the sort of issue that would be subject to verification based upon a 'core of objective evidence.'"  *Arthur v. Offit*, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010) (citation omitted).

Second*, even if the statements were not protected opinion, they would still fail to state a claim because, as a matter of law, they are substantially true.  The CDC guidance discussed in the Article established that the covid vaccines "provide strong protection against hospitalization" for not only earlier variants of covid, but also the omicron variant.  This Court has recently taken judicial notice of similar CDC guidance, recognizing that the vaccines are "highly effective . . . including against emerging variants."  *United States v. Bryant*, 2022 WL 1094731, at *4 (W.D. Va. Apr. 12, 2022) (citing a CDC report, "COVID-19 Vaccines Work," and denying a sentence reduction).  In light of this CDC guidance, Dr. Malone cannot establish it was materially false to say his views disputing vaccine efficacy were "misinformation."

Third, Dr. Malone is a limited-purpose public figure as a matter of law and his claims therefore must be dismissed because he cannot plausibly allege that the Post published a defamatory falsehood with actual malice—that is, with "knowledge that [the Article] was false or with reckless disregard of whether it was false or not."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254,

279-80 (1964).  "The actual malice standard is subjective; whether the speaker knowingly uttered a falsehood or 'in fact entertained serious doubts as to the truth of his publication' is measured by the state of mind of 'the persons . . . having responsibility for the publication'" at issue.  *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 273 (4th Cir. 2022) (affirming Rule 12(b)(6) dismissal). Here, the Complaint fails plausibly to state a claim because it provides nothing more than "naked assertions devoid of further factual enhancement" regarding the subjective awareness of those journalists, which is insufficient.  *Id.*  Indeed, the context of the Article—criticism of Dr. Malone's heterodox opinions—provides no fertile ground for suggesting that the Post should have subjectively disbelieved the truth of what it reported (i.e., widely-accepted CDC guidance).

Dr. Malone's two related claims, for defamation by implication and "insulting words," are subject to dismissal on identical grounds.  In addition, the Post is immune from all three claims pursuant to Virginia's anti-SLAPP statute, Va. Code Ann. § 8.01-223.2(A).

The Complaint should be dismissed with prejudice.

## BACKGROUND

### A.     Dr. Malone

Dr. Robert Malone "is a licensed medical doctor living in Madison County, Virginia," who, according to the Complaint, is "an internationally recognized scientist/physician" and "a world-renowned scientist and expert in the field of mRNA technology."  Compl. ¶¶ 1, 3.  The Complaint describes Dr. Malone's "advocacy" regarding "vaccine safety" and his public efforts to "identify and teach about life-saving treatments for COVID-19 and other pandemics."  *Id.* ¶ 3.  As the Article reported, Dr. Malone's outspoken views have elevated him as one of the "most controversial voices of the movement against coronavirus vaccines and health mandates."  Ex. A, at 2.[1]  Before

---

[1] The following documents are properly before the Court on a Rule 12(b)(6) motion to dismiss: (1) documents incorporated into the Complaint by reference, including the publications discussed

Twitter suspended his account in December 2021 "for violating the platform's coronavirus misinformation policy," he "published his criticisms of the vaccines and mandates" on the platform, "building a following of more than 440,000 [followers] – and a reach that extended far beyond." *Id*. at 2, 5.

The Article reported that Dr. Malone has received extensive press coverage regarding his views about the covid pandemic and vaccines, citing prior coverage in prominent outlets such as the Associated Press, the *Atlantic* magazine, the Canadian Broadcasting Corp., and elsewhere. This coverage frequently identifies him as a purveyor of "misinformation."[2]

In December 2021, Dr. Malone appeared for an interview on a popular podcast called the *Joe Rogan Experience*, "which averages 11 million listeners per episode." *See* Ex. A, at 2. During the interview, Dr. Malone claimed that political leaders and the news media had "hypnotized" the public with respect to vaccines and the pandemic, and compared the country's pandemic policies to those in place during the Holocaust. *Id.* at 3. He also asserted that "Tony Fauci" and others

---

and hyperlinked in the Article, *see Brimelow v. N.Y. Times*, 2020 WL 7405261, at *1 n.1 (S.D.N.Y. Dec. 17, 2020) (material "linked to by one of the articles at issue" and cited in the complaint was "incorporated by reference" and appropriate to consider on a motion to dismiss), *aff'd*, 2021 WL 4901969 (2d Cir. Oct. 21, 2021); (2) documents subject to judicial notice, including "items in the public record" such as CDC and other government reports, *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (taking judicial notice of data on government website); (3) "court filings in another case," particularly "where the records pertain to a related case," *Stepp v. U.S. Bank N.A.*, 2018 WL 6625081, at *2 n.7 (W.D. Va. Dec. 18, 2018), *aff'd*, 956 F.3d 266 (4th Cir. 2020); and (4) other "documents submitted by a movant that were not attached to or expressly incorporated into the complaint, as long as the documents were integral to the complaint and there is no dispute about the authenticity of the documents," *Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Va.*, 685 F. App'x 277, 278 (4th Cir. 2017) (per curiam).

[2] For example, in August 2021, the *Atlantic* published an article entitled "The Vaccine Scientist Spreading Vaccine Misinformation," which reported on Dr. Malone's "ascendant" star power, explaining that "[o]n show after show, Malone, who has quickly amassed more than 200,000 Twitter followers, casts doubt on the safety of the vaccines while decrying what he sees as attempts to censor dissent." *See* https://www.theatlantic.com/science/archive/2021/08/robert-malone-vaccine-inventor-vaccine-skeptic/619734/.

"actively conspired to destroy any discussion of the appropriateness of lockdown strategies"; that the vaccine mandates "are explicitly inconsistent with the Nuremberg Code"; and that "Pfizer is one of the most criminal pharmaceutical organizations in the world based on their past legal history and fines." Ex. C, at 37, 39-40. The Article described the interview and linked to a transcript.

Dr. Malone's controversial comments on the podcast became the subject of intense public controversy. For example, a group of 270 scientists and medical professionals signed a public letter calling on Spotify to do more to fight "misinformation" after Spotify published the episode. *See* Ex. A, at 3. The signatories emphasized that "Dr. Malone used the JRE platform to further promote numerous baseless claims, including several falsehoods about COVID-19 vaccines and an unfounded theory that societal leaders have 'hypnotized' the public." Ex. D, at 1. The Article summarized and provided a hyperlink to the letter.

On January 23, 2022, Dr. Malone gave a fifteen-minute speech at an "anti-vaccine and anti-mandate" demonstration on the National Mall called "Defeat the Mandates: An American Homecoming." Ex. A, at 1. As part of his speech, Dr. Malone stated that "[r]egarding the genetic covid vaccines, the science is settled. . . . They are not working." *Id.*

Dr. Malone has filed multiple lawsuits concerning his advocacy on issues related to vaccines. He sued Twitter for breach of contract in California state court over his suspension from the platform. Ex. E. The court granted Twitter's motion to strike under California's anti-SLAPP law, holding that Twitter's "decision to suspend plaintiffs' accounts because it believed that plaintiffs were spreading false information regarding the COVID-19 pandemic pertains to an issue of public interest." *Malone v. Twitter, Inc.*, 2022 WL 14835110, at *1 (Cal. Super. Sept. 28, 2022). And last week, Dr. Malone filed another lawsuit against his critics, this time against a group of

anti-vaccine activists whom he alleges defamed him by suggesting he is a secret member of the "Deep State." Complaint ¶¶ 10-11, *Malone v. Breggin*, No. 3:22-cv-63 (W.D. Va. Oct. 30, 2022).

**B.    The Article at Issue**

On January 24, 2022, the Post published an Article titled, "A vaccine scientist's discredited claims have bolstered a movement of misinformation," which was written by Post reporter Timothy Bella. Ex. A, at 1. The Article reported on the controversy surrounding statements Dr. Malone made during his speech at the anti-vaccine rally on the National Mall and previously during his appearance on the *Joe Rogan Experience* podcast. The Article discussed criticism and praise that Dr. Malone had received in the wake of his comments, with reference to CDC guidance and related studies which were hyperlinked for the Post's online readers.

The Article explained that Dr. Malone's advocacy against the covid vaccines came on the heels of guidance from the CDC which reported that the vaccines were safe and effective, including at combatting serious outcomes caused by the omicron variant. Specifically, the Article said:

> The misinformation came two days after the Centers for Disease Control and Prevention released its first studies based on real-world data showing that coronavirus vaccines provide strong protection against hospitalization from the rapidly spreading omicron variant.

*Id*. The word "misinformation" hyperlinked to an earlier Post article that discussed and linked to CDC studies showing that the vaccines were widely effective, and which explained that the false assertion that "the vaccines don't work at all" was "[m]isinformation" that conflicted with prevailing medical guidance.[3] The word "coronavirus" hyperlinked to the section of the Post's website devoted to covid-related coverage.

---

[3] *See* Lena H. Sun et al., *Booster Shots in U.S. Have Strongly Protected Against Severe Disease from Omicron Variant, CDC Studies Show*, Washington Post (Jan. 21, 2022), https://www.washingtonpost.com/health/2022/01/21/cdc-studies-booster-shots-omicron/.

The Article also discussed Dr. Malone's controversial interview on the *Joe Rogan Experience*.  The Article reported that Dr. Malone's comments included "compar[ing] the country's pandemic policies to Nazi Germany," and described the response letter from 270 medical professionals to Spotify "demanding that the company do more to prevent the spread of false covid-19 information."  Ex. A, at 3.

Medical experts quoted in the Article expressing views on Dr. Malone's comments included Professor Jay Van Bavel, an assistant professor of psychology and neural science at New York University, Jonathan Laxton, an assistant professor of medicine at the University of Manitoba, and Timothy Caulfield, the Canada research chair in health law and policy at the University of Alberta.  These experts warned that in their opinions, Dr. Malone's criticism of the covid vaccines was dangerous and inconsistent with prevailing medical guidance.

The Article reported that "[c]olleagues and critics alike have acknowledged Malone's impressive credentials in a career spanning more than three decades."  *Id.* at 3.  It acknowledged that Dr. Malone has many supporters, several of whom were quoted in the Article, including Robert F. Kennedy, Jr.  The Article also noted that the Post sought comment from Dr. Malone, giving him an opportunity to share his perspective about the Post's reporting.  However, he "declined to be interviewed for th[e] story."  *Id.*

C.    **The Lawsuit**

On August 19, 2022, Dr. Malone filed this lawsuit against the Post, asserting causes of action for defamation, defamation by implication, and insulting words.  The Complaint alleges that the Post defamed Dr. Malone in ten statements in the Article.  Compl. ¶ 8.[4]

---

[4] The Complaint listed many of the challenged statements with ellipses.  For completeness, the statements are presented here in full without ellipses.  In addition, the statements must be considered "in context" of the entire article.  *Virginia Citizens Def. League v. Couric*, 910 F.3d 780, 786 (4th Cir. 2018).

Statements 1 to 4, 8, and 10 concerned the Post's reporting that Dr. Malone's views amount to "misinformation," that his claims have been "discredited," that he spreads "falsehoods" about the vaccines, and that "mass-formation psychosis" is an "unfounded theory." *Id.*

- Statement 1 is the headline:  "A vaccine scientist's discredited claims have bolstered a movement of misinformation."  Ex. A, at 1.

- Statement 2 described Dr. Malone's speech at the "Defeat the Mandates" rally: "Robert Malone stood on the steps of the Lincoln Memorial before thousands of anti-vaccine and anti-mandate demonstrators Sunday, [and] the medical doctor and infectious-disease researcher repeated the falsehoods that have garnered him legions of followers."  *Id.*

- Statement 3 quoted from Dr. Malone's speech and explained that it contradicted recent guidance from the CDC:  "Regarding the genetic covid vaccines, the science is settled,' [Malone] said in a 15-minute speech that referenced the Rev. Martin Luther King Jr. and John F. Kennedy. 'They are not working.' The misinformation came two days after the Centers for Disease Control and Prevention released its first studies."  *Id.*

- Statement 4 stated that "His claims and suggestions have been discredited and denounced by medical professionals as not only wrong, but also dangerous."  *Id.* at 2.

- Statement 8 described Dr. Malone's appearance on the *Joe Rogan Experience* podcast, and quoted his remarks:  Dr. Malone "promoted an unfounded theory called 'mass-formation psychosis,' telling Rogan that a 'third of the population [is] basically being hypnotized' into believing what the mainstream media and Anthony S. Fauci, the nation's top infectious-disease expert and chief medical adviser to President Biden, report on the vaccines."  *Id.* at 3.

- Statement 10 summarized that "some are calling on [Dr. Malone] to take a step back and reflect on the damage his misinformation is causing."  *Id.* at 7.

Statements 5 to 7 and 9 present the opinions of the medical and science experts who were interviewed in the Article.  The Complaint includes only partial versions of these statements, omitting that the statements were made by experts interviewed for the Article.

- Statement 5:  "'There is a huge market for misinformation,' said Jay Van Bavel, an assistant professor of psychology and neural science at New York University who has studied conspiracy theories and misinformation. 'The way he's framed in the conspiracy-theory world  is  that  he's  a  courageous  whistleblower  rather  than

someone who is spreading misinformation — and it's only enhancing his profile.'"
*Id.* at 2.

- Statement 6: "A former colleague of Malone's, who spoke on the condition of anonymity to speak candidly without fear of recrimination, said that while Malone is 'a brilliant scientist who has a tremendous amount of experience and knowledge about vaccines,' there is reason to be concerned about how his newfound stardom could be a public health risk."  *Id.*

- Statement 7 quotes from the same former colleague: "'I don't feel what he's doing and saying is in the right context or necessarily very helpful,' the former co-worker said. 'Everyone is entitled to their opinion, but there's a risk we're all facing when he's not accurately representing the information.'"  *Id.* at 2-3.

- Statement 9 is an assertion by Professor Caulfield: "'You have this individual who has all these credentials and this history in the biomedical world, so that looks impressive.  And he's referencing a study that, on the face of it, may look impressive.  But you don't know that the study is fraudulent,' Caulfield said, adding that Malone has "weaponized bad research.'"  *Id.* at 6.

The Complaint seeks more than $50 million in damages.  Compl. ¶ 29.

## LEGAL STANDARD

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Va. Citizens*, 910 F.3d at 783 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Legal conclusions "couched as . . . factual allegation[s]" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  *Iqbal*, 556 U.S. at 678.  If the facts alleged, taken as true for purposes of the motion, would not "state a claim to relief that is plausible on its face," the complaint must be dismissed.  *Id.* (citation omitted).

"[B]ecause the defense of baseless defamation claims imposes an additional cost, in the form of potentially deterred speech, federal courts have historically given close scrutiny to

pleadings in libel actions.  As a result, courts in Virginia and the Fourth Circuit routinely dismiss at the outset defamation claims that are based on constitutionally protected speech by media defendants." *Arthur*, 2010 WL 883745, at *3 (citation omitted); *accord Edwards v. Schwartz,* 378 F. Supp. 3d 468, 500 (W.D. Va. 2019).

Indeed, "the First Amendment's press and speech clauses greatly restrict the common law where the defendant is a member of the press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern.  Where, as here, all of these considerations are present, the constitutional protection of the press reaches its apogee." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1091-92 (4th Cir. 1993) (footnote and citation omitted).

## ARGUMENT

**I.      The Complaint Fails To State a Claim for Defamation or Defamation by Implication.**

"To state a claim for defamation in Virginia, a plaintiff must plead that the defendant (i) published (ii) an actionable statement (iii) with the requisite degree of intent." *Arthur*, 2010 WL 883745, at *4.  "Whether a statement is actionable is a matter of law to be determined by the court." *Chapin*, 993 F.2d at 1092.  The court must assess "whether the statement can reasonably be interpreted as stating actual facts, as well as whether it contain[s] a provably false factual connotation." *Arthur*, 2010 WL 883745, at *4, (alteration in original).

Dr. Malone fails to state a claim for defamation for three independently sufficient reasons. First, the statements at issue are constitutionally protected statements of opinion rather than provably true or false statements of fact and thus are not actionable.  Second, and alternatively, any statements that could be read to convey provably true or false statements of fact are, as a matter of law, not materially false.  Third, Dr. Malone, who as a matter of law is a limited-purpose public figure subject to the actual malice test, fails plausibly to allege that the Post published any of the challenged statements with actual malice.

Dr. Malone's claim that the Post defamed him "by implication" should be dismissed for all the same reasons. It also fails for the independent reason that Dr. Malone has not made the "especially rigorous showing" required to support such a claim. *Chapin*, 993 F.2d at 1093.

### A.   The Challenged Statements Are Protected Opinion.

"[S]peech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action." *Schaecher v. Bouffault*, 772 S.E.2d 589, 600 (Va. 2015) (citation omitted); *Arthur*, 2010 WL 883745 at *4. The first requirement "involves statements that are not 'provable as false,' meaning the language cannot be proved true or false by a 'core of objective evidence' or by reference to an 'objectively verifiable event.'" *Edwards*, 378 F. Supp. 3d at 504. For example, as a general rule, courts will not attempt to discern objective truth in the midst of an ongoing medical or scientific debate like the one squarely presented in this case. *Arthur*, 2010 WL 883745, at *6. The second requirement prohibits liability for "statements that 'cannot reasonably [be] interpreted as stating actual facts,'" such as "'loose, figurative, or hyperbolic language.'" *Edwards*, 378 F. Supp. 3d at 505 (alteration in original) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20-21 (1990)). "[B]oth the Virginia constitution and the First Amendment to the U.S. Constitution compel the imposition of these twin requirements of opinion." *Arthur*, 2010 WL 883745, at *4; *CACI Premier Tech. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008); *Schaecher*, 772 S.E.2d at 600. "In analyzing this issue, courts must focus on both 'the plain language of the statement' and 'the context and general tenor of its message,' keeping in mind that the 'verifiability of the statement' is a touchstone 'because a statement not subject to objective verification is not likely to assert actual facts.'" *Arthur*, 2010 WL 883745, at *5 (citation omitted).

Here, the statements at issue are constitutionally protected opinion for at least two reasons. First, as a matter of law, the Court cannot evaluate objective truth in a defamation case like this

involving a medical dispute over vaccine efficacy.  Second, the Complaint identifies no actual statements of fact that are capable of objective verification.

### 1.      The Statements Are Protected Opinion Because Courts Cannot Resolve Medical or Scientific Disputes in Defamation Actions.

The crux of Dr. Malone's case is that the Post (and the experts it quoted) defamed him by asserting that his views about the covid vaccines have been "discredited," are "unfounded," amount to "falsehoods," could be "a public health risk," and constitute "misinformation."  But an inquiry into whether a doctor's theories about a vaccine constitute misinformation cannot form the basis of a defamation claim because doing so "threatens to ensnare the Court in the thorny and extremely contentious debate over the perceived risks of certain vaccines, their theoretical association with particular diseases or syndromes, and, at bottom, which side of this debate has 'truth' on their side.  That is hardly the sort of issue that would be subject to verification based upon a 'core of objective evidence.'"  *Arthur*, 2010 WL 883745, at *6.  Such statements "lack[] the provably false content that is required to support a defamation action."  *Id.*; *see Edwards*, 378 F. Supp. 3d at 528 ("determining the falsity of the [statements] . . . would mire the court in a scientific debate of the sort courts are loathe to resolve in defamation actions").[5]

For this reason, courts in Virginia and across the country routinely dismiss, and affirm dismissals of, defamation cases that, like this one, concern medical or scientific disputes.  *See, e.g.*, *Arthur*, 2010 WL 883745, at *6 (granting 12(b)(6) dismissal of case involving magazine report on dispute over pediatric vaccines); *Immanuel*, 2022 WL 3030290, at *4 (granting motion to dismiss

---

[5] *See also, e.g.*, *Immanuel v. CNN*, 2022 WL 3030290, at *4 (S.D. Tex. Aug. 1, 2022) ("Courts do not use defamation law to decide or cut short arguments over unsettled questions of what medication best or most safely prevents or treats disease.") (citing cases); *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 492 (2d Cir. 2013) ("[A]s a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation.").

in case involving plaintiff's support of a discredited covid treatment); *Edwards*, 378 F. Supp. 3d at 528 (granting motion to dismiss in case involving scientific debate over water contamination in Flint); *see also, e.g.*, *ONY*, 720 F.3d at 497 (affirming dismissal of case involving efficacy of competing medications, emphasizing that "courts are ill-equipped to referee such controversies").

This case is similar to *Arthur* and *Immanuel*, which both addressed public debates over efficacy of treatments for disease.  In *Arthur*, an anti-vaccine advocate sued *Wired* magazine for defamation over an article that discussed "the public debate over systematic vaccination of children recommended by the [CDC], including [a physician's] advocacy in favor of the vaccine protocol and opponents' often sharp criticism both of [his] position on this issue as well as of him personally."  2010 WL 883745, at *1.  The physician criticized the plaintiff's "Kaflooey theories," and asserted she was a liar.  *Id.* at *3.  Like Dr. Malone, the plaintiff claimed that the article portrayed her as "a person lacking honesty and integrity who should be shunned or excluded by those who seek information and opinion upon which to rely."  *Id.* at *5 (cleaned up); *compare* Compl. ¶ 1.  But the court granted *Wired's* motion to dismiss, emphasizing that the courtroom was no place to resolve a scientific dispute over vaccination efficacy and policy:

> Plaintiff may wish to defend in Court the credibility of her conclusions about the dangers of vaccines, the validity of the evidence she offers in support of those theories, and the policy choices that flow from those views—as well as her own credibility for having advanced those positions.  These, however, are academic questions that are not the sort of thing that courts or juries resolve in the context of a defamation action.

*Arthur*, 2010 WL 883745, at *6; *see id.* at *4 (stressing that "constitutional and common law protections" were "at their zenith" because the publication involved "the safety of vaccines.").

Similarly, in *Immanuel*, a physician sued CNN for defamation over its coverage of her participation in a public demonstration "in front of the United States Supreme Court to publicly

advocate for the use of hydroxychloroquine ('HCQ') to treat COVID-19." 2022 WL 3030290, at *1. Specifically, she claimed that CNN "defamed her by covering her statements advocating and promoting HCQ to treat COVID and by criticizing her views as disinformation supporting harmful medical treatments." *Id.* at *4. The court dismissed her complaint, holding that "Dr. Immanuel cannot bring a defamation claim on the basis of CNN's statements of its opinion about Dr. Immanuel's public support of a COVID treatment that many scientists had rejected." *Id.*

Here, as in *Arthur* and *Immanuel*, Dr. Malone seeks to call upon the Court to determine as a matter of objective fact whether his claims about covid vaccines should be deemed scientifically valid. Dr. Malone has asserted that he intends to validate his stated view that "the so-called 'vaccines' do not work," which, he claims "is abundantly clear from both the scientific and anecdotal evidence to date." Compl. ¶ 15. If this case were to be tried, the jury would be asked to weigh Dr. Malone's "evidence" against CDC studies cited by the Post "showing that coronavirus vaccines provide strong protection against hospitalization from the rapidly spreading omicron variant." Ex. A, at 1. The jury would have to resolve a dispute over vaccine efficacy that is playing out in the public square, choosing sides between Dr. Malone and the experts whose views were quoted and cited by the Post. But these debates are, as a matter of law, "academic questions that are not the sort of thing that courts or juries resolve in the context of a defamation action." *Arthur*, 2010 WL 883745, at *6. "Statements of different, even conflicting, opinions, about unsettled matters of scientific or medical treatment that are the subject of ongoing public debate and deep public interest, cannot give rise to defamation claims." *Immanuel*, 2022 WL 3030290, at *4.

### 2. The Statements Are Not "Demonstrably False" Statements of Fact That Are Subject to "Objective Verification."

In addition, each of the statements at issue is a statement of constitutionally protected opinion, because they are not "demonstrably false" statements of fact that are subject to "objective verification." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998).

Statements 1 to 5, 8 and 10 asserted variations of the idea that Dr. Malone's claims that the covid vaccines were not working constitute "misinformation," are "unfounded," and have been "discredited." *See* Compl. ¶ 8; Ex. A. But courts have repeatedly held that such assessments are "nonactionable because of their imprecise meaning and because they are susceptible to many interpretations." *Project Veritas v. Stanford Univ.*, 2022 WL 1555047, at *6-7 (W.D. Wash. May 17, 2022) (dismissing case, holding that blog post accusing publisher of engaging in "election disinformation" is nonactionable opinion); *Cheng v. Neumann*, --- F.4th ---, 2022 WL 14354608, at *1, *6 (1st Cir. 2022) (affirming dismissal, holding that statement that newspaper had "promoted anti-vaccine misinformation" is "nonactionable opinion"); *Immanuel*, 2022 WL 3030290, at *6 (dismissing case, holding that statements criticizing doctor's views as "disinformation supporting harmful medical treatments" were nonactionable opinion); *Coleman v. Grand*, 2021 WL 768167, at *265 (E.D.N.Y. Feb. 26, 2021) (dismissing case, holding that accusation that plaintiff had "covertly spread misinformation" was nonactionable opinion).[6]

Statements 6, 7, and 9 echoed similar themes, and were direct quotations of the subjective commentary of Dr. Malone's critics. For example, statements 6 and 7 quoted a former colleague of Dr. Malone's. *See* Compl. ¶ 8; Ex. A. But the nuanced perspective that Dr. Malone, while

---

[6] *See also, e.g.*, *Faltas v. State Newspaper*, 928 F. Supp. 637, 641 (D.S.C. 1996) (allegation that plaintiff medical doctor "will lie to suit her agenda" is nonactionable opinion), *aff'd* 155 F.3d 557 (4th Cir. 1998); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) (statement that plaintiff was "guilty of misleading the American public" was "obviously a statement of opinion that could not reasonably be seen as stating or implying provable facts about [plaintiff's] work").

"brilliant," is "a public health risk," because of his statements about covid vaccines to his large following, is an amorphous, subjective determination. *See, e.g.*, *Edwards*, 378 F. Supp. 3d at 514-15 (assertions that the plaintiff's conduct warranted "an investigation" and had resulted in "harm" to others were "highly subjective" and "indefinite and ambiguous"). Indeed, the source qualified that while he was offering his own perspective, "[e]veryone is entitled to their own opinion" about Dr. Malone. Ex. A, at 2-3. That is transparently not a statement of fact.

Finally, statement 9, an assertion by Professor Caulfield, is also protected opinion for the same reasons. Professor Caulfield explained that: "'You have this individual who has all these credentials and this history in the biomedical world, so that looks impressive. And he's referencing a study that, on the face of it, may look impressive. But you don't know that the study is fraudulent" or that that Malone has "weaponized bad research,'" by relying on a retracted study. Ex. A, at 6. First, the retracted study at issue in the statement was not Dr. Malone's, so Professor Caulfield's statement that the research was "fraudulent" is not about Dr. Malone at all. Second, in context, Professor Caulfield's commentary about the retracted study and Dr. Malone's use of it were subjective assertions in the midst of a medical debate, which do not state objective facts that can support a claim. *See, e.g.*, *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 357 (3d Cir. 2020) (commentator's statement that "[t]hese kids are being weaponized" and "are defending raw racism and sexual abuse" are subjective characterizations).[7]

---

[7] The statement is also protected opinion based on disclosed facts, i.e., Professor Caulfield's opinion on the disclosed fact that Dr. Malone had tweeted about a retracted coronavirus study. Ex. A, at 4. Because the "bases for the . . . conclusion are fully disclosed, no reasonable reader would consider the [statement] [as] anything but the opinion of the author drawn from the circumstances related." *Chapin*, 993 F.2d at 1093; *Edwards*, 378 F. Supp. 3d at 505 (similar).

**B.   Even if any of the Challenged Statements Were Capable of Verification, They Could Not Be Deemed Materially False.**

Even if the challenged statements could be characterized as provably true or false, they still could not form the basis of a defamation claim because they could not be deemed materially false. The material "falsity of a statement and the defamatory 'sting' of the publication must coincide— that is, where the alleged defamatory 'sting' arises from substantially true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel." *Chapin*, 993 F.2d at 1092. And where a plaintiff "has not pled sufficient facts to establish that the statements about him are materially false," the case must be dismissed. *Harvey*, 48 F.4th at 271. Thus, courts routinely grant or affirm the grant of Rule 12(b)(6) dismissals on substantial truth grounds. *See, e.g.*, *id.*; *Mirafuentes v. Estevez*, 2015 WL 8177935, at *4 (E.D. Va. Nov. 30, 2015); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("[W]hen falsity is an element of a state defamation claim, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false.").

Here, the "gist" or "sting" of statements 1 to 7, 10 is substantially true. These statements explained that Dr. Malone's assertion that the "science was settled" that "the genetic covid vaccines . . . are not working" amounted to "misinformation" that has been "discredited." *See* Compl. ¶ 8. The Post's reporting is supported and substantially true because of CDC guidance cited directly in the Article. Specifically, the Article reported that "[t]he misinformation came two days after the Centers for Disease Control and Prevention released its first studies based on real-world data showing that coronavirus vaccines provide strong protection against hospitalization from the rapidly spreading omicron variant," and provided a link to a separate article with more information about the studies, and a link to the studies. Ex. A, at 1. The court can take judicial

notice of this guidance, which shows the government's scientific conclusion that that vaccines were working.  *See supra* note 3.[8]

Indeed, this Court has recognized that "although the vaccines are not 100% effective at preventing illness and death, they are still highly effective."  *Bryant*, 2022 WL 1094731, at *4. More than three months after the Post's Article was published, this Court observed in *Bryant* that "evidence . . . *continues to support the high effectiveness of the vaccines*, *including against emerging variants*."  *Id.* (emphasis added) (citing COVID-19 Vaccines Work, *supra*).  The Court should once again take judicial notice of this fact, which renders the statements regarding vaccine efficacy substantially true.  *See id.*; *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

The Court can also take judicial notice that the CDC has published a report specifically warning that Dr. Malone had "expressed his belief in several pieces of misinformation related to COVID-19 vaccine safety and side effects" on the *Joe Rogan Experience*.  *See* Ex. F.  Thus, the Post's reporting in statement 8 that Dr. Malone's "mass-formation psychosis" expressed on that program is "an unfounded theory" is consistent with the CDC's published view.

Finally, to the extent Professor Caulfield's criticism in Statement 9 that Dr. Malone had circulated a "fraudulent" study is deemed a statement of fact, it was also substantially true.  Dr. Malone does not and cannot dispute that he shared via Twitter a study which had been "retracted by the study's authors . . . because of a significant mathematical error."  Ex. A, at 5-6.  And there is no difference whether Dr. Malone promoted a "retracted" study rather than a "fraudulent one."

---

[8] For example, one CDC study found that "receipt of a third vaccine dose was highly effective at preventing COVID-19–associated emergency department and urgent care encounters . . . and preventing COVID-19–associated hospitalizations."  *See Effectiveness of a Third Dose of mRNA Vaccines Against COVID-19–Associated Emergency Department and Urgent Care Encounters and Hospitalizations Among Adults During Periods of Delta and Omicron Variant Predominance*, CDC (2022), https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e3.htm?s_cid=mm7104e3_w.

Accordingly, to the extent the statements at issue are capable of verification, Dr. Malone "has not pled sufficient facts to establish that [they] are materially false." *Harvey*, 48 F.4th at 271.

### C.   The Complaint Fails to Plausibly Allege that the Post Published the Challenged Statements with Actual Malice.

The Complaint should also be dismissed because Dr. Malone has failed to allege that the Post published the Article with the requisite degree of fault, actual malice. The First Amendment requires that a public official or public figure cannot prevail on a defamation claim unless he pleads and proves that the defendant published the false and defamatory statements with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279-80. As the Fourth Circuit has recently emphasized, "[t]he actual malice standard is subjective; whether the speaker knowingly uttered a falsehood or 'in fact entertained serious doubts as to the truth of his publication' is measured by the state of mind of 'the persons . . . having responsibility for the publication'" at issue. *Harvey*, 48 F.4th at 273 (quoting *Sullivan*, 376 U.S. at 287). "This standard requires 'much more than a failure to exercise ordinary care.'" *Fairfax v. CBS Corp.*, 2 F.4th 286, 293 (4th Cir. 2021) (citation omitted). "Recklessness is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. Rather, a plaintiff must prove that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* (citations omitted).

This is a "difficult" standard that "embodies our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks' on public figures," *Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 WL 1440183, at *3 (E.D. Va. Apr. 25, 2012) (quoting *Sullivan*, 376 U.S. at 270). Courts routinely grant and affirm the grant of Rule 12(b)(6) motions to dismiss cases for failure to plead sufficient facts plausibly to support an inference of

actual malice, *see, e.g.*, *id.*, including in multiple Fourth Circuit opinions, *see Harvey*, 48 F.4th at 273; *Fairfax*, 2 F.4th at 293; *Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012).

### 1.  Malone Is a Limited-Purpose Public Figure.

As a matter of law, based on allegations either in or incorporated in the Complaint, Dr. Malone is a limited-purpose public figure who must establish actual malice to recover on a defamation claim.  Public figures include individuals who "have assumed roles of special prominence in the affairs of society" or otherwise "invite attention and comment."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).  And "[w]hen a person thrusts himself into the forefront of public debate, he is treated as a 'limited-purpose public figure' for purposes of comment on issues arising from that debate."  *Carr v. Forbes., Inc.*, 259 F.3d 273, 278 (4th Cir. 2001).

"In deciding whether a plaintiff qualifies as a limited-purpose public figure, the Court must ask 'whether a public controversy gave rise to the defamatory statement[s]' and 'whether the plaintiff's participation in that controversy sufficed to establish him as a public figure within the context of that public controversy.'"  *Gilmore v. Jones*, 370 F. Supp. 3d 630, 667 (W.D. Va. 2019) (quoting *Carr*, 259 F.3d at 278).  "Whether a plaintiff is a public figure is a question of law for the court to decide."  *Besen*, 2012 WL 1440183, at *3 (granting motion to dismiss); *Edwards*, 378 F. Supp. 3d at 505 (same); *see also, e.g.*; *Chapin*, 993 F.2d at 1092 n. 4 (same).

The "threshold" question is "whether a public controversy gave rise to the alleged defamation."  *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1554 (4th Cir. 1994).  "A public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants."  *Id.* (cleaned up).  Here, the effectiveness of the covid vaccines and related public-health regulations clearly qualify as a public controversy. Indeed, there may not have been an issue of greater public concern and attention when the Post published the Article in January 2022.  Other courts have recognized that the debate over covid

treatment is a "controversial issue[] of public concern" that gives rise to limited-purpose public figure status. *See Immanuel*, 2022 WL 3030290, at *5 (physician who touted HCQ as a covid treatment was a limited-purpose public figure); *see also Malone*, 2022 WL 14835110, at *1 (Twitter's suspension of Dr. Malone for "spreading false information regarding the COVID-19 pandemic pertains to an issue of public interest"); *Arthur*, 2010 WL 883745, at *4 (article about "safety of vaccines" "indisputably involves a matter of substantial public concern").

The second part of the inquiry is whether the plaintiff has sufficiently thrust himself into the forefront of the controversy. Courts consider five factors to make this determination, analyzing whether "(1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation." *Gilmore*, 370 F. Supp. 3d at 319.

As a preliminary matter, Dr. Malone has effectively conceded in his Complaint that he is a limited-purpose public figure on issues related to covid vaccines. The Complaint acknowledges that he "is an internationally recognized scientist/physician" who engages in "advocacy" regarding the vaccines. Compl. ¶ 3. And he has separately admitted in his lawsuit against Twitter that he "is a notable figure of public interest regarding COVID-19 policy, diagnosis and/or treatment." Ex. E ¶ 19. These concessions alone should resolve the inquiry.

Regardless, even if Dr. Malone had not admitted his limited-purpose public figure status, the five factors would be easily satisfied here. With regard to the first three factors, Dr. Malone indisputably had wide access to channels of effective communication, voluntarily assumed a role of prominence, and sought to influence the debate. The Article specifically concerned Dr.

Malone's remarks at an anti-vaccine political rally at the National Mall "before thousands of anti-vaccine and anti-mandate demonstrators," during which he claimed the vaccines "are not working," Ex. A, at 1, and encouraged his audience to fight vaccine mandates, *id.* at 7; *see Immanuel*, 2022 WL 3030290, at *5 (holding, on a motion to dismiss, that physician was a limited-purpose public figure "as evidenced by her participation in the speech in a political gathering of like-minded doctors before the United States Supreme Court"); *Gilmore*, 370 F. Supp. 3d at 668 (holding, on a motion to dismiss, that the plaintiff was a limited-purpose public figure where plaintiff "conceded that he gave interviews" to news organizations and "wrote an online editorial for *Politico*" regarding the "Unite the Right" rally.  And long before the rally, Dr. Malone had already established himself as a public commentator through both traditional and social media channels, most notably including his interview on the *Joe Rogan Experience* in December 2021, which "averages 11 million listeners per episode." Ex. A at 1; *see Immanuel*, 2022 WL 3030290, at *5 (emphasizing the plaintiff doctor's "Internet discussions about vaccinations and medicine in general").

The fourth and fifth factors are also satisfied here.  The controversy surrounding the effectiveness of the covid vaccines existed well before the Article's publication on January 24, 2022.  As the Article correctly reported, Dr. Malone spoke out concerning the covid vaccines at the height of the outbreak of the omicron variant and the public discourse regarding the effectiveness of the vaccines. Ex. A, at 2 (noting that Dr. Malone's media appearances had thrust him "into the limelight . . . when unvaccinated patients continue to fill ICU wards").  Thus, he "retained public figure status at the time of the alleged defamation" and continues to retain such status. *See Gilmore*, 370 F. Supp. 3d at 667.  Indeed, the Complaint asserts that he continues to be "an internationally recognized scientist/physician."  Compl. ¶ 3.

Other courts have recognized that similar figures who promote heterodox views on covid treatment qualify as limited-purpose public figures. For example, in *Immanuel*, the plaintiff advocated HCQ to treat covid, despite studies showing the drug to be ineffective to treat the virus and the FDA's warnings against using the drug as a treatment. 2022 WL 3030290, at *3. Because the plaintiff "weighed in on controversial issues of public concern," which included the issue of "how to medically treat COVID," the plaintiff was a limited-purpose public figure "whose background and credibility were legitimate subjects of inquiry." *Id.* at *3, *5. So too here.

### 2. The Complaint Fails to Plausibly Allege That the Post Published the Article with Actual Malice.

Dr. Malone fails to satisfy his burden of pleading actual malice at the Rule 12(b)(6) stage, for multiple reasons.

First, the Complaint fails to make any credible, much less plausible, showing as to the Post's knowledge of falsity or reckless disregard for the truth. The Fourth Circuit has repeatedly held that cases must be dismissed where the defendant's subjective knowledge of falsity was not plausibly alleged. For example, in *Harvey*, the court emphasized that "naked assertions devoid of further factual enhancement that a defendant has failed to observe journalistic standards, conceived a storyline in advance and sought to find evidence to confirm that story, and relied on unreliable or biased sources in researching a purportedly defamatory article, fail to plausibly allege malice." 48 F.4th at 274 (cleaned up); *see also Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012); *Fairfax*, 2 F.4th at 293. But here, the Complaint offers little more than conclusory allegations of the Post's subjective understanding of the alleged facts. *See, e.g.*, Compl. ¶¶ 19(a) (alleging that "WaPo fabricated the Statements and made up facts out of whole cloth"); 19(b) ("WaPo manufactured the story line" and "consciously published false Statements"); 19(c) ("WaPo and its editors made the conscious choice prior to publication to abandon all journalistic standards and

integrity"). "This kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Mayfield*, 674 F.3d at 378.

Second, the allegations that the Post relied upon "biased" sources, Compl. ¶ 19(a), and acted with "institutional hostility, hatred, extreme bias, spite and ill-will towards Dr. Malone," *e.g.*, Compl. ¶ 19(d), are equally deficient. Besides the fact that these allegations are similarly conclusory, "caselaw resoundingly rejects the proposition that a motive to disparage someone is evidence of actual malice." *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012). As the Fourth Circuit held in rejecting a similar allegation, "self-interest and politics 'motivate[ ] many news sources; if dealing with such persons were to constitute evidence of actual malice on the part of a reporter, much newsgathering would be severely chilled.'" *Fairfax*, 2 F.4th at 294.

In addition, it is clear on the face of the Article that the Post's sources were both numerous and reliable, which *undermines* any claim of actual malice. These sources include the CDC itself, several prominent scientists and medical experts, and also prior reporting from other reputable news organizations, such as the AP, the *Atlantic*, and the CBC. *See supra* n.2. Such "good faith reliance" on reputable sources "*precludes* a finding of actual malice as a matter of law." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988) (emphasis added); *see also, e.g.*, *Yiamouyiannis v. Consumers Union*, 619 F.2d 932, 940 (2d Cir. 1980) (no actual malice where "[s]cientific writings and authorities in the field were consulted").

Third, the Complaint's assertion that the Post "intentionally ignored Dr. Malone's credentials and stature," Compl. ¶¶ 2, 19(a), is wrong. The Article discussed Dr. Malone's "impressive credentials in a career spanning more than three decades," and many professional accomplishments. Ex. A, at 3. The Article even quoted the perspective of some of Dr. Malone's enthusiastic supporters, such as Robert F. Kennedy Jr., who said he found Malone's statements to

be "measured and scrupulously sourced," and who dismissed "media reports on Malone promoting misinformation as a 'euphemism for any assertion that departs from government orthodoxies [whether] true or not.'" *Id.* The Post's inclusion of this contrarian stance pushing back against the prevailing criticism of Dr. Malone's views once again *undermines* any claim of actual malice. *See, e.g.*, *Harvey*, 48 F.4th at 266 ("including the grounds for doubting a source . . . may actually rebut a claim of malice"); *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1304 (D.C. Cir. 1996) (such information "tends to rebut a claim of malice, not to establish one").

Looking beyond these conclusory allegations, there is only one specific fact alleged about the Post's subjective knowledge, which is both erroneous and clearly insufficient to establish actual malice. The Complaint erroneously alleges that the Post should have known it was publishing false information because of "its interview of Dr. Malone at his farm in Virginia." Compl. ¶ 19(a). This allegation fails for two reasons. First, even if the Post had interviewed Malone, the Complaint fails to identify any plausible fact the Post supposedly learned through the interview which would actually have given the Post "serious doubts" about anything it published. *See, e.g.*, *Harvey*, 48 F.4th at 273. Second, the allegation it is demonstrably incorrect; the Article makes plain that Malone *declined* an interview from the Post. *See* Ex. A, at 3 ("Malone declined to be interviewed for the story, saying he would 'not be able to support' The Washington Post's request.").[9] Dr. Malone's refusal to comment *undermines* any effort to show that the Post acted with actual malice. *See, e.g.*, *Mayfield*, 674 F.3d at 378 (affirming dismissal on actual malice grounds, emphasizing that the plaintiff was contacted for comment).

---

[9] Dr. Malone may be confusing the Post's article with a separate article published by another news organization. For example, he did participate in an interview with the New York Times. *See* Davey Alba, *The Latest Covid Misinformation Star Says He Invented the Vaccines*, N.Y. Times (Apr. 3, 2022), https://www.nytimes.com/2022/04/03/technology/robert-malone-covid.html (explaining that Dr. Malone had been interviewed "from his 50-acre horse farm").

###### 3. The Complaint Fails to Plausibly Allege That the Post Republished the Article with Actual Malice.

The Complaint also alleges that the Post acted with actual malice by "republishing" the Article via a hyperlink in a separate July 30, 2022 article, entitled "Conservatives skeptical of coronavirus vaccines battle to lead a hospital," written by Post reporter Tim Craig, after Dr. Malone had already sent a demand letter regarding the first Article, written by Timothy Bella. *See* Compl. ¶ 20(f). This argument is also deficient for at least three independent reasons.

First, the Fourth Circuit has held that "[t]he public policy supporting the single publication rule and the traditional principles of republication dictate that a mere hyperlink, without more, cannot constitute republication." *Lokhova v. Halper*, 995 F.3d 134, 143 (4th Cir. 2021).

Second, "the state of mind required for actual malice [has] to be brought home to the persons in the [news] organization having responsibility for the publication." *Fairfax*, 2 F.4th at 294 (quoting *Sullivan*, 376 U.S. at 287). For example, in *Sullivan*, the Supreme Court held that the plaintiff could not show actual malice simply by pointing to contradictory stories elsewhere "in the Times' own files." *Id.*; *see also, e.g.*, *Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495, 502 (D. Md. 2020) (no actual malice where the complaint "contains no factual allegations referring to the state of mind of the individual in charge of Defendant's banners," even though a separate journalist working on the same telecast had correctly reported charges against plaintiff). Here, Dr. Malone makes no plausible allegation that Craig, the journalist responsible for the July 30, 2022 piece, had any knowledge about a demand letter concerning an Article written by a different journalist in one of the largest newsrooms in the United States. Indeed, the Complaint includes no allegations about Craig of any kind whatsoever.

Third, even if Craig had received the demand letter, the Complaint fails to articulate any plausible reason why it would have given him any basis to doubt his reporting. The Supreme

Court has specifically instructed that "the press need not accept 'denials, however vehement" because "such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'" *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 691 n.37 (1989).

*     *     *

As a public figure speaking out at the Lincoln Memorial, on a podcast with millions of listeners, and elsewhere, Dr. Malone is subject to "vehement, caustic, and sometimes unpleasantly sharp attacks." *Sullivan*, 376 U.S. at 270. Because he has failed to plausibly establish that the Post acted with actual malice, the case should be dismissed.

### D.   The Complaint Does Not Identify "Affirmative" Support on the Face of the Article to Plausibly Establish that the Publication "Intended or Endorsed" Any Allegedly Defamatory Inference.

The Complaint also includes a barebones claim for "defamation by implication." *See* Compl. ¶¶ 21-25. This claim fails for all of the same reasons as Dr. Malone's general "defamation" claim. *See, e.g.*, *Harvey*, 520 F. Supp. 3d at 715-16 (dismissing implication claim on substantial truth grounds); *Florio v. Gallaudet Univ.*, 2022 WL 2785972, at *3 (D.D.C. July 15, 2022) (dismissing implication claim on of and concerning, opinion, and substantial truth grounds).

The claim also fails because Dr. Malone does not satisfy the heightened burden that is constitutionally required at the pleading stage for a defamation by implication claim. The Fourth Circuit has cautioned that "because the constitution provides a sanctuary for truth," a libel-by-implication claim requires an "especially rigorous showing." *Chapin*, 993 F.2d at 1092. The plaintiff must establish not only that the defamatory meaning can be "reasonably" inferred from the publication, but also that the publication "affirmatively suggest[s] that the author intend[ed] or endors[ed] the inference." *Id.* at 1093; *see also, e.g.*, *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990) (publication must supply "additional, affirmative evidence suggesting

27

that the defendant intends or endorses the defamatory inference").  "Without a clear signal" from the face of the article "that [the defendant] endorsed the inference," a defamation-by-implication claim must be dismissed.  *Jenkins v. Snyder*, 2001 WL 755818, at *5 (E.D. Va. Feb. 6, 2001).

The Complaint fails both prongs of this test.  The Complaint alleges in conclusory fashion that the Article implied Dr. Malone is "intentionally dishonest, deceitful, immoral, unethical and dangerous, and that he is unfit to practice medicine."  Compl. ¶ 22.  These supposed implications are neither reasonable nor endorsed on the face of the publication.

The Complaint erroneously states that the challenged statements accused Dr. Malone of "disinformation," Compl. ¶ 1, but the Article never used that term and did not suggest that Dr. Malone is "intentionally dishonest, deceitful, immoral, unethical," or acting in bad faith.[10]  Rather, it reported that Dr. Malone is a "brilliant scientist" who has views that are highly controversial and have been called incorrect by experts.   While it reported that Dr. Malone conveyed "misinformation," that means "wrong or misleading information," regardless of whether there is intent to mislead, not disinformation, which is "*deliberately* false."[11]

In any event, even if the Article had literally stated that Dr. Malone's critics believed him to be intentionally dishonest, that would not be enough to state a claim in this context.  In *Arthur*, for example, the court held that an *explicit* accusation that the plaintiff anti-vaccine advocate was a liar was not actionable.  *See, e.g.*, 2010 WL 883745, at *3 (emphasizing that "several Fourth

---

[10] The Article did convey that some believe Dr. Malone's views are "dangerous," but that assertion was literally stated in the Article and the subject of Statement 4, which cannot support a claim for the reasons discussed *supra* Section I.A.  The Complaint fails to articulate any coherent reason why it should be analyzed separately as an implication claim.

[11] *Compare Misinformation*, *Oxford English Dictionary* (2022) ("The action of misinforming someone; the condition of being misinformed."), *with Disinformation*, *Oxford English Dictionary* (2022) ("The dissemination of deliberately false information, esp. when supplied by a government or its agent to a foreign power or to the media, with the intention of influencing the policies or opinions of those who receive it; false information so supplied.").

Circuit cases make clear that including a remark by one of the key participants in a heated public-health debate stating that his adversary 'lies' is not an actionable defamation").

Similarly, the alleged implication that Dr. Malone is "unfit to practice medicine" is also unreasonable. It ignores that the Article described him as a "a brilliant scientist who has a tremendous amount of experience and knowledge about vaccines," with legions of supporters. Ex. A. To be sure, the Article criticized some of his views on public health, but it cannot be reasonably interpreted as stating that he is "unfit" to practice. The Complaint fails to identify anything on the face of the Article showing the Post intended or endorsed this inference. *Chapin*, 993 F.2d at 1092.

## II.  The Complaint Fails To State a Claim for Insulting Words.

Virginia's "insulting words" statute creates a private cause of action for "words . . . which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01-45. To state a for insulting words, "a plaintiff must plead words that (1) would be construed as insults and (2) tend to violence and breach of the peace." *Goulmamine v. CVS Pharmacy*, 138 F. Supp. 3d 652, 668-69 (E.D. Va. 2015). Dr. Malone's claim must be dismissed for two independent reasons.

First, Dr. Malone's claim for insulting words fails for the same reasons as the defamation claim. Courts in the Fourth Circuit have long recognized that insulting words claims are "virtually co-extensive" with defamation claims, and that two "must ineluctably 'rise or fall together.'" *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987).

Second, the claim should also be dismissed for the independent reason that the Statements at issue here would not "tend to violence and breach of the peace." Dr. Malone pleads no facts plausibly showing that the Post's reporting "presented a clear and present danger of a violent physical reaction." *Goulmamine*, 138 F. Supp. 3d at 669. This reporting "may have upset" Dr. Malone, but "nothing indicates that the words used would prompt a violent reaction, from [Dr.

Malone] or any other reasonable person." *Jackson v. Middle Peninsula N. Neck Cmty. Servs. Bd.*, 2017 WL 216701, at *4 (E.D. Va. Jan. 18, 2017). Viable fighting words cases necessarily involve much more extreme facts. For example, in *Carter v. Dominion Energy, Inc.*, there were threats that defendants wanted to "whip" the plaintiff "like they used to do the slaves." 529 F. Supp. 3d 525, 547 (W.D. Va. 2021). There was no rhetoric like that in the Article.

## III. The Post Is Immune from Suit Pursuant to Virginia Law.

Dr. Malone's claims also fail because they cannot overcome Virginia's anti-SLAPP statute, which provides that publishers like the Post have an immunity against suit for speech "regarding matters of public concern that would be protected under the First Amendment to the United States Constitution," unless published with "actual or constructive knowledge that they are false or with reckless disregard for whether they are false." *See* Va. Code Ann. § 8.01-223.2(A).[12]

Here, the Statements attributed to the Post all related to "matters of public concern," and in particular the effectiveness of the covid vaccines and government mandates related to public health during a surge in infections due to the omicron variant. Courts across the country have held that debates about covid vaccines are a matter of public concern. *See supra* Section I.C.1. Dr. Malone fails to plausibly allege that the Post acted with the requisite knowledge that the statements were false or with reckless disregard for whether they are false. *See supra* Section I.C.2. The Post "therefore sufficiently established the statutory immunity under § 8.01-223.2(A)." *Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 598-99 (E.D. Va. 2020), *aff'd*, 2 F.4th 286 (4th Cir. 2021).[13]

---

[12] The statute does not require the plaintiff to be a public figure. Instead, section 8.01-223.2(A) applies to all statements on topics of "public concern," regardless of the subject's status.

[13] Because the statute expressly extends immunity against Dr. Malone's defamation claim, the immunity should reach his insulting words claim as well. Dr. Malone cannot plead around defamation limitations afforded the Anti-SLAPP statute simply by picking a parallel, "co-extensive" tort. *Potomac Valve & Fitting*, 829 F.2d at 1284.

**CONCLUSION**

The Court should dismiss the Complaint with prejudice, and, pursuant to Virginia's anti-SLAPP statute, Va. Code § 8.01-223.2(B), award the Post its reasonable attorneys' fees and costs.


Dated:  November 7, 2022                    Respectfully submitted,

                                            WILLIAMS & CONNOLLY LLP

                                            By:     /s/ *Perry F. Austin*_____

                                            Thomas G. Hentoff (*pro hac vice* application filed)
                                            Nicholas G. Gamse (*pro hac vice* application filed)
                                            Perry F. Austin (VSB No. 93373)

                                            680 Maine Avenue, SW
                                            Washington, DC 20024
                                            Telephone: (202) 434-5000
                                            Facsimile: (202) 434-5029
                                            paustin@wc.com

                                            *Counsel for WP Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2022, I electronically filed the foregoing Memorandum of Law in support of the Washington Post's Motion to Dismiss with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to registered CM/ECF participants.

/s/ *Perry F. Austin*
*Counsel for WP Company LLC*