# EXHIBIT E

1  BRYAN M. GARRIE (SBN 131738)
   BRYAN M. GARRIE, APC
2  Post Office Box 2731
   La Jolla, California 92038
3  Telephone: (858) 459-0020
   Facsimile: (858) 459-0777
4
5  MATTHEW P. TYSON (SBN 178427)
   LAW OFFICE OF MATTHEW P. TYSON
   5580 La Jolla Blvd. #170
6  La Jolla, California 92037
   Telephone: (619) 787-0614
7
   Attorneys for:
8  Robert W. Malone, MD;
   Brian M. Tyson, MD; and
9  Peter A. McCullough, MD, MPH, FACC, FAHA, FNKF, FNIA, FCRSA

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**06/27/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
**Deputy Clerk**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO, CIVIC CENTER COURTHOUSE

CGC-22-600397

| | |
|---|---|
| ROBERT W. MALONE, MD; BRIAN M. TYSON, MD; and PETER A. MCCULLOUGH, MD, MPH, FACC, FAHA, FNKF, FNIA, FCRSA,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.; and DOE 1 through DOE 25, inclusive,<br><br>Defendants. | Case No. _____<br><br>Unlimited Jurisdiction<br><br>Jury Trial Demanded<br><br>**COMPLAINT FOR**<br>**BREACH OF CONTRACT** |

22  ///

23  ///

24  ///

25  ///

1

Complaint by Drs. Malone, Tyson, and McCullough

**Plaintiffs Robert W. Malone, MD; Brian M. Tyson, MD; and Peter A. McCullough, MD, MPH, FACC, FAHA, FNKF, FNIA, FCRSA, each allege:**

**Parties, Jurisdiction, and Venue**

1. Drs. Malone, Tyson, and McCullough are individuals who reside outside of San Francisco County.

2. Twitter, Inc. is a Delaware corporation with its principal place of business in San Francisco County and within the venue of the Civic Center Courthouse.

3. The true name and capacity and/or bases of liability of DOE 1 through DOE 25, inclusive, is unknown, and Plaintiffs will seek leave to amend this complaint to identify their true names and capacities when known.

4. On information and belief, each of the fictitiously named DOE defendants is responsible for, or has contributed to, the loss and damages alleged herein and the matters giving rise to the relief sought.

5. The conduct giving rise to these claims occurred within San Francisco County and within the City of San Francisco.

6. Each of the contracts between Drs. Malone, Tyson, and McCullough on the one hand, and Defendants on the other hand, specifies that all disputes which are the subject of this complaint be brought solely in the federal or state courts located in San Francisco County.

7. Drs. Malone, Tyson, and McCullough each seek an equitable remedy within the unlimited jurisdiction of the Superior Court of the State of California.

///

///

///

///

2

Complaint by Drs. Malone, Tyson, and McCullough

# FIRST CAUSE OF ACTION
## For Breach of Contract

**By Plaintiffs Robert W. Malone, MD; Brian M. Tyson, MD; and Peter A. McCullough, MD, MPH, FACC, FAHA, FNKF, FNIA, FCRSA**
**Against Defendants Twitter, Inc.; and DOE 1 through DOE 25, inclusive**

8. Paragraphs 1 through 7 are re-alleged.

9. Defendants provide an international social media platform that allows users to post short "tweet" messages for public discussion.

10. Defendants implemented clear, unambiguous, and specific community standards to limit COVID-19 misinformation on the platform.

11. Defendants' COVID-19 content moderation terms included takedown procedures for, *e.g.*, ineffective treatments and false diagnostic criteria, as well as measures for "labelling" information as "misleading." Defendants established a five-strike policy as part of its COVID-19 misinformation guidelines and community standards.

12. Drs. Malone, Tyson, and McCullough reasonably relied on Defendants to employ and enforce its terms in good faith, and it was foreseeable to Defendants that Drs. Malone, Tyson, and McCullough would rely on the terms; Defendants were bound to follow them.

13. A truthful tweet regarding COVID-19 policy, diagnosis and/or treatment would not violate Defendants' terms of service, community standards, content moderation policies, or misinformation guidelines.

14. Defendants provide a Verified badge to indicate that an account of public interest is authentic. To be verified, an account must be notable and active. Defendants define a notable account to include "activists, organizers, and other influential individuals." This includes "prominently recognized" individuals. Defendants provide Verified badges "to encourage and maintain trust" between users on the platform.

///

15. Drs. Malone, Tyson, and McCullough do not seek to hold Defendants liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached the terms it put in place.

**Plaintiff Robert W. Malone, MD alleges:**

16. Dr. Malone is an internationally recognized scientist and physician who obtained his MD from Northwestern Feinberg School of Medicine, completed the Harvard Medical School fellowship as a global clinical research scholar, and was scientifically trained at the University of California, at both Davis and San Diego, and at the Salk Institute Molecular Biology and Virology laboratories.

17. Dr. Malone is the original inventor of mRNA vaccination technology, DNA vaccination, and multiple non-viral DNA and RNA/mRNA platform delivery technologies. He has roughly 100 scientific publications, which have been cited more than 12,000 times, and holds an "outstanding" impact factor rating on Google Scholar.

18. Dr. Malone sits as a non-voting member on the National Institutes of Health ACTIV committee, which is tasked with managing clinical research for a variety of drug and antibody treatments for COVID-19.

19. Dr. Malone is a notable figure of public interest regarding COVID-19 policy, diagnosis and/or treatment.

20. Dr. Malone used the Twitter account @rwmalonemd.

21. Dr. Malone only posted truthful statements regarding COVID-19 policy, diagnosis and/or treatment with this account.

22. None of Dr. Malone's tweets qualified as a strike or otherwise violated Defendants' stated rules.

23. Defendants permanently suspended Dr. Malone's account.

24. The suspension violated Defendants' terms.

4

Complaint by Drs. Malone, Tyson, and McCullough

25. Dr. Malone sent a letter request to Defendants to have his suspend account reactivated, and to have a Verified badge placed on his account. Defendants did not respond to Dr. Malone's request. A true and correct copy of the letter is attached as EXHIBIT 1.

26. Dr. Malone and Defendants entered into a contract.

27. Dr. Malone did all, or substantially all, of the significant things that the contract required him to do.

28. Defendants violated a material term of the contract.

29. Dr. Malone was harmed.

30. The general public was harmed.

31. Defendants' breach of contract was a substantial factor in causing Dr. Malone's harm.

32. Defendants' breach of contract was a substantial factor in causing the public's harm.

33. A legal remedy would be inadequate.

34. Dr. Malone prays for judgment in his favor and against Defendants for specific performance, ordering Defendants to reactive Dr. Malone's account, for costs of suit, and for such other and further relief as the court deems just.

35. Dr. Malone will move for an award of attorney's fees pursuant to Code of Civil Procedure section 1021.5 for enforcement of an important right affecting the public interest.

**Plaintiff Brian M. Tyson, MD alleges:**

36. Dr. Tyson is a California-licensed physician with fifteen years of hospital and emergency medicine experience. Dr. Tyson practices together with Dr. George Fareed in California's COVID-19 epicenter, Imperial Valley.

37. Drs. Tyson and Fareed have gained international recognition for providing successful early treatment to more than 10,000 COVID-19 patients, with zero (0) patient deaths

5

when treatment began within seven (7) days.  Dr. Fareed has testified before the United States Senate regarding the high success rate of early treatment protocols, and Dr. Tyson has provided such testimony in the Australian Supreme Court.

38. Drs. Tyson and Fareed are co-authors of the book Overcoming the Darkness of COVID, and Dr. Tyson was a recent candidate for the United States House of Representatives for California's 25th Congressional District.

39. Dr. Tyson is a notable figure of public interest regarding COVID-19 policy, diagnosis and/or treatment.

40. Dr. Tyson used the Twitter account @btysonmd.

41. Dr. Tyson only posted truthful statements regarding COVID-19 policy, diagnosis and/or treatment with this account.

42. None of Dr. Tyson's tweets qualified as a strike or otherwise violated Defendants' stated rules.

43. Defendants permanently suspended Dr. Tyson's account.

44. The suspension violated Defendants' terms.

45. Dr. Tyson sent a letter request to Defendants to have his suspend account reactivated, and to have a Verified badge placed on his account.  Defendants did not respond to Dr. Tyson's request.  A true and correct copy of the letter is attached as EXHIBIT 1.

46. Dr. Tyson and Defendants entered into a contract.

47. Dr. Tyson did all, or substantially all, of the significant things that the contract required him to do.

48. Defendants violated a material term of the contract.

49. Dr. Tyson was harmed.

50. The general public was harmed.

///

6

Complaint by Drs. Malone, Tyson, and McCullough

51. Defendants' breach of contract was a substantial factor in causing Dr. Tyson's harm.

52. Defendants' breach of contract was a substantial factor in causing the public's harm.

53. A legal remedy would be inadequate.

54. Dr. Tyson prays for judgment in his favor and against Defendants for specific performance, ordering Defendants to reactive Dr. Tyson's account, for costs of suit, and for such other and further relief as the court deems just.

55. Dr. Tyson will move for an award of attorney's fees pursuant to Code of Civil Procedure section 1021.5 for enforcement of an important right affecting the public interest.

**Plaintiff Peter A. McCullough, MD, MPH, FACC, FAHA, FNKF, FNIA, FCRSA alleges:**

56. Dr. McCullough received his BA from Baylor University, his MD from the University of Texas Southwestern Medical School, his internal residency at the University of Washington, and his master's degree in public health at the University of Michigan. He is the founder and current president of the Cardiorenal Society of America.

57. Dr. McCullough been published more than 1,000 times, made presentations on the advancement of medicine across the world, and has been an invited lecturer at the New York Academy of Sciences, the National Institutes of Health, U.S. Food and Drug Administration, and the European Medicines Agency. Dr. McCullough has served on the editorial boards of multiple specialty journals and served as a member or chair of data safety monitoring boards of 24 randomized clinical trials.

58. Dr. McCullough has been a leader in the medical response to COVID-19, has more than 30 peer-reviewed publications on the infection, and has commented and testified extensively on COVID-19 treatment, including before the U.S. Senate Committee on Homeland

1 Security and Governmental Affairs.  Dr. McCullough is also a news commentator and media personality.

59. Dr. McCullough is a notable figure of public interest regarding COVID-19 policy, diagnosis and/or treatment.

60. Dr. McCullough used the Twitter account @cov19treatments.

61. Dr. McCullough only posted truthful statements regarding COVID-19 policy, diagnosis and/or treatment with this account.

62. None of Dr. McCullough's tweets qualified as a strike or otherwise violated Defendants' stated rules.

63. Defendants permanently suspended Dr. McCullough's account.

64. Defendants allowed Mr. McCullough to have the new account @p_mcculloughmd.

65. Dr. McCullough only posts truthful statements regarding COVID-19 policy, diagnosis and/or treatment with this account.

66. Dr. McCullough's account is followed by more than 475,000 Twitter users.

67. Dr. McCullough clearly meets Defendants' criteria for a Verified account.

68. Dr. McCullough applied for Defendants to Verify his account.

69. Defendants refused to Verify Dr. McCullough's account, stating that "it does not meet our criteria."

70. The failure to Verify violated Defendants' terms.

71. Dr. McCullough sent a letter request to Defendants to have his suspend account reactivated, and to have a Verified badge placed on his account.  Defendants did not respond to Dr. McCullough's .  A true and correct copy of the letter is attached as EXHIBIT 1.

72. Dr. McCullough and Defendants entered into a contract.

///

8

Complaint by Drs. Malone, Tyson, and McCullough

73. Dr. McCullough did all, or substantially all, of the significant things that the contract required him to do.

74. Defendants violated a material term of the contract.

75. Dr. McCullough was harmed.

76. The general public was harmed.

77. Defendants' breach of contract was a substantial factor in causing Dr. McCullough's harm.

78. Defendants' breach of contract was a substantial factor in causing the public's harm.

79. A legal remedy would be inadequate.

80. Dr. McCullough prays for judgment in his favor and against Defendants for specific performance, ordering Defendants to provide a Verified badge for Dr. McCullough's account, for costs of suit, and for such other and further relief as the court deems just.

81. Dr. McCullough will move for an award of attorney's fees pursuant to Code of Civil Procedure section 1021.5 for enforcement of an important right affecting the public interest.

Respectfully,

BRYAN M. GARRIE, APC
LAW OFFICE OF MATTHEW P. TYSON

Dated: June 26, 2022    By: _____
BRYAN M. GARRIE
MATTHEW P. TYSON
Attorneys for Robert W. Malone, MD;
Brian M. Tyson, MD; and
Peter A. McCullough, MD, MPH, FACC, FAHA, FNKF, FNIA, FCRSA

# EXHIBIT 1

<table>
<tr><td>

BRYAN M. GARRIE, APC
ATTORNEY AT LAW

MAILING ADDRESS:
POST OFFICE BOX 2731
LA JOLLA, CALIFORNIA 92038

STREET ADDRESS:
1117 WALL STREET, SUITE 1
LA JOLLA, CALIFORNIA 92037

TELEPHONE: (858) 459-0020
FACSIMILE: (858) 459-0777
bgarrie@garrielaw.com

</td><td>

LAW OFFICE OF
MATTHEW P. TYSON

5580 LA JOLLA BLVD. #170
LA JOLLA, CALIFORNIA 92037

TELEPHONE: (619) 787-0614
matthew@matthewptyson.com

*WRITER MAY BE REACHED BY:*
PHONE: (619) 787-0614
matthew@matthewptyson.com

</td></tr>
</table>

May 12, 2022

*Via* First Class U.S. Mail:

Twitter, Inc.
Legal Department
1355 Market Street, Suite 900
San Francisco, California 94103

> **Re:** **Vladimir Z. Zelenko, MD (@ZelenkoZev)**
> **Robert W. Malone, MD (@rwmalonemd)**
> **George C. Fareed, MD (@georgefareed2)**
> **Brian M. Tyson, MD (@btysonmd)**
> **Peter A. McCullough, MD, MPH, FACC, FAHA, FNKF, FNIA, FCRSA (@cov19treatments)**
> **Reinstatement of Accounts**

Dear Officers, Directors, and Managing Agents of Twitter, Inc.:

We write to you on behalf of five clients, Vladimir Z. Zelenko, MD, Robert W. Malone, MD, George C. Fareed, MD, Brian M. Tyson, MD, and Peter A. McCullough, MD, MPH, FACC, FAHA, FNKF, FNIA, FCRSA, each of whom has a Twitter account which is permanently suspended.

Dr. Zelenko graduated *summa cum laude* with a BA degree with honors in Chemistry from Hofstra University and earned his MD from University at Buffalo School of Medicine. He is a licensed New York State physician and one of the first to successfully treated thousands of patients for COVID-19 in the prehospital setting. Dr. Zelenko shared his groundbreaking Zelenko Protocol with the world, and he has been consulted by dozens of governments, from Russia to South Africa to Peru. Just weeks after Brazil implemented the Zelenko Protocol, a published study revealed a 95% reduction in government hospital deaths. Dr. Zelenko is the author of two books, *Metamorphosis* and *Essence to Essence*, and he also markets an all-natural dietary supplement, Z-DTox™, which includes ingredients from the Zelenko Protocol and is designed to support the natural defense system of the body.

Dr. Malone is an internationally recognized scientist/physician who obtained his MD from Northwestern Feinberg School of Medicine, completed the Harvard Medical School fellowship as a global clinical research scholar, and was scientifically trained at the University of California, at both Davis and San Diego, and at the Salk Institute Molecular Biology and Virology laboratories. Dr. Malone is the original inventor of mRNA vaccination technology, DNA vaccination, and multiple non-viral DNA and RNA/mRNA platform delivery technologies. He has roughly 100 scientific publications, which have been cited more than 12,000 times, and holds an "outstanding" impact factor rating on Google Scholar. Dr. Malone sits as a non-voting member on the NIH ACTIV committee, which is tasked with managing clinical research for a variety of drug and antibody treatments for COVID-19.

Dr. Fareed graduated with honors at Harvard, obtained his MD from Harvard Medical School, and conducted virology research at Harvard, UCLA, and the NIAID (NIH). He is a California-licensed physician with thirty years of clinical experience, treating HIV and other infectious diseases as well as practicing primary case medicine. Dr. Tyson is a California-licensed physician with fifteen years of hospital and emergency medicine experience. Drs. Fareed and Tyson practice together in California's COVID-19 epicenter, Imperial Valley. They have gained international recognition for providing successful early treatment to more than 10,000 COVID-19 patients, with zero (0) deaths when treatment began within seven days. Dr. Fareed has testified before the United States Senate regarding the high success rate of early treatment protocols, and Dr. Tyson has provided such testimony in the Australian Supreme Court. Drs. Fareed and Tyson are co-authors of the book *Overcoming the Darkness of COVID*, and Dr. Tyson is currently a candidate for United States House of Representatives for California's 25th Congressional District.

Dr. McCullough received his BA from Baylor University, his MD from the University of Texas Southwestern Medical School, his internal residency at the University of Washington, and his master's degree in public health at the University of Michigan. Dr. McCullough is the founder and current president of the Cardiorenal Society of America. He been published more than 1,000 times, made presentations on the advancement of medicine across the world, and has been an invited lecturer at the New York Academy of Sciences, the National Institutes of Health, U.S. Food and Drug Administration, and the European Medicines Agency. Dr. McCullough has served on the editorial boards of multiple specialty journals and served as a member or chair of data safety monitoring boards of 24 randomized clinical trials. Dr. McCullough has been a leader in the medical response to COVID-19, has more than 30 peer-reviewed publications on the infection, and has commented and testified extensively on COVID-19 treatment, including before the U.S. Senate Committee on Homeland Security and Governmental Affairs.

In a nutshell, these are five of the most knowledgeable and helpful voices in the world regarding COVID-19 treatment. Disturbingly, Twitter silenced all of them.

      Drs. Zelenko, Malone, Fareed, Tyson, and McCullough each used Twitter as a value tool to share their first-hand experiences in treating COVID-19, relay important facts, express their personal viewpoints and opinions, and promote their products and services. They were widely followed on Twitter and likely saved thousands of lives by posting messages from their accounts before each of them was suspended.

      We understand that Twitter, Inc. is a private company providing a social media platform that allows users to post short messages for public discussion, and that Twitter's terms of service stated that it could suspend user accounts for "any or no reason." However, Twitter also implemented specific community standards to limit COVID-19 misinformation on the platform, and Twitter was bound to follow those terms. Twitter's COVID-19 content moderation policies included takedown procedures for, *e.g.*, ineffective treatments and false diagnostic criteria, as well as measures for "labelling" information as "misleading." Twitter established a five-strike policy as part of its COVID-19 misinformation guidelines.

      Twitter violated its own COVID-19 misinformation guidelines when it suspended the accounts of Drs. Zelenko, Malone, Fareed, Tyson, and McCullough. None of these physicians posted false or misleading information, nor did they receive five strikes before suspension.

      Drs. Zelenko, Malone, Fareed, Tyson, and McCullough each hold a viable claim against Twitter, Inc. for breach of contract under California law. They do not seek to hold Twitter liable as a publisher or speaker of third-party content, but rather as a counter-party to a contract, as a promisor who has breached. Consequently, 47 U.S.C. Section 230©(2)(A) does not provide Twitter a shield to liability.

      It's no accident that Twitter violated its own COVID-19 misinformation guidelines and suspended the accounts of Drs. Zelenko, Malone, Fareed, Tyson, and McCullough. Twitter received express and implied threats from government officials to censor certain viewpoints and speakers, lest Twitter face the amendment or revocation of Section 230, or antitrust enforcement. This was a financial decision for Twitter. For the sake of profits, it chose to abandon its role as a neutral internet service provider and instead openly and intentionally collude with government to silence lawful speech.[1]

Case 3:22-cv-00040-NKM-JCH  Document 10-5  Filed 11/07/22  Page 14 of 15  Pageid#: 208

---

[1] Please retain all hardcopy and electronic records, including all metadata, which evidence any communication between any Twitter, or any authorized agent of Twitter, on the one hand, and any ostensible agent or representative of the Biden administration, on the other hand, relating to censorship of users or content on Twitter, pursuant to Penal Code Section 135.

|  |  |
|---|---|
| BRYAN M. GARRIE, APC<br>ATTORNEY AT LAW | LAW OFFICE OF<br>MATTHEW P. TYSON |

TWITTER, INC.

The First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. A private entity violates the First Amendment if the government coerces or induces it to take action that the government itself would not be permitted to do, such as censor expression of a lawful viewpoint.

Twitter's willful and oppressive conduct gives Drs. Zelenko, Malone, Fareed, Tyson, and McCullough claims for violation of the First Amendment of the U.S. and California Constitutions, California's common carrier and unfair competition laws, and for unjust enrichment. In addition to compensatory damages, they can seek punitive and exemplary damages, an injunction, and the disgorgement of Twitter's profits. Section 230 provides no protection to these claims; it requires good faith conduct, and Twitter's conduct as an oppressive state actor is the antithesis of a neutral internet service provider acting in good faith.

Twitter's co-founder and former CEO, Jack Dorsey, publicly addressed Twitter's politically motivated censorship. Mr. Dorsey called President Trump's suspension a "business decision" and said that "it was a morally bad decision to be clear, and foolish in the extreme." Similarly, Twitter's potential future owner, Elon Musk, has stated that "[p]ermanent bans should be extremely rare and really reserved for accounts that are bots, or scam, spam accounts."

Drs. Zelenko, Malone, Fareed, Tyson, and McCullough are not bots, scammers, or spammers. They are internationally recognized physicians with compelling messages that can save lives. Twitter should let them post, whether it or the current administration agrees with them or not. Counter-speech, not censorship, is the proper response to supposed "misinformation." Twitter has an opportunity to promote open, dynamic, rational discourse and restore trust in its platform At the same time, Twitter can avoid the expense and risk of zealously litigated claims.

We demand that you immediately reinstate[2] the accounts of Drs. Zelenko, Malone, Fareed, Tyson, and McCullough, and stop censoring users on behalf of the government or any internal policy which opposes lawful expression regarding COVID-19 or anything else. Fail not at your peril.

Sincerely,

*Matt Tyson* (signature)

Matthew P. Tyson

Cc: Elon Musk *via* Twitter (@elonmusk)

---

[2] The notable and influential accounts of Drs. Zelenko, Malone, Fareed, Tyson, and McCullough should each receive a blue Verified badge.

PAGE 4