IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| DR. ROBERT W. MALONE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-00046 |
| | ) | |
| | ) | |
| WP COMPANY, LLC | ) | |
| d/b/a The Washington Post | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Dr. Robert W. Malone ("Plaintiff" or "Dr. Malone"), by counsel, pursuant to W.D. Va. Civ. R. 11(c), respectfully submits this Memorandum in Opposition to the motion to dismiss filed by defendant, WP Company, LLC d/b/a The Washington Post ("WaPo").

## I.  INTRODUCTION

"Freedom of the press under the First Amendment does not include absolute license to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J., Concurring).  The press has no "special immunity from the application of general laws", nor does it have a "special privilege to invade the rights and liberties of others." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972).  110 years ago, the Virginia Supreme Court very clearly held that the press has no right to "invent facts" or to

1

"comment on the facts so invented" and, thereby, convince readers that the invented facts are true.  Simply put:

> "[l]iberty of the press is not license, and newspapers have no privilege to publish falsehoods or to defame under the guise of giving the news.  It is held that the press occupies no better position than private persons publishing the same matter; that it is subject to the law, and if it defames it must answer for it."

*Williams Printing Co. v. Saunders*, 113 Va. 156, 73 S.E. 472, 477 (1912) (numerous citations and quotations omitted); *Dexter v. Spear*, 7 F. Cas. 624-625 (1st Cir. 1825) (Story, J.) ("No man has a right to state of another that which is false and injurious to him.  A fortiori no man has a right to give it a wider and more mischievous range by publishing it in a newspaper … The liberty of speech and the liberty of the press do not authorize malicious and injurious defamation.  There can be no right in printers, any more than in other persons, to do wrong.").

Dr. Malone, a licensed medical doctor and world-renowned scientist, filed this action for defamation and insulting words after WaPo egregiously libeled him in an online article that WaPo and its agents then broadly republished to tens of millions on Twitter. [*ECF No. 1 ("Compl."), ¶¶ 1, 8, 9*].  The matter is before the Court on WaPo's motion to dismiss. [*ECF No. 9*].  WaPo challenges the sufficiency of Dr. Malone's defamation claims on the following grounds: (1) the published statements are not materially false; (2) the published statements are protected opinion; (3) WaPo did not publish the statements with actual malice; and (4) the complaint fails to plausibly state that WaPo "intended or endorsed" the defamatory implication.  WaPo challenges Dr. Malone's insulting words claim on the ground that the statements do not tend to violence or breach of the peace.  Finally, WaPo argues that it is immune to suit under § 8.01-223.2

of the Code of Virginia. [*ECF No. 10 ("WaPo Mem.")*].  For the reasons stated below, WaPo's motion to dismiss should be DENIED in its entirety.

## II.  BACKGROUND

### A.  *The Parties*

Robert Malone is a licensed medical doctor living in Madison County, Virginia. He is an internationally recognized scientist/physician and the original inventor of mRNA vaccination as a technology, DNA vaccination, and multiple non-viral DNA and RNA/mRNA platform delivery technologies.  He holds numerous fundamental domestic and foreign patents in the fields of gene delivery, delivery formulations, and vaccines: including for fundamental DNA and RNA/mRNA vaccine technologies.  Dr. Malone has approximately 100 scientific publications with over 12,000 citations of his work (per Google Scholar with an "outstanding" impact factor rating).  He has been an invited speaker at over 50 conferences, has chaired numerous conferences, and has sat on or served as chairperson on Health and Human Services (HHS) and Department of Defense (DoD) committees.  He currently sits as a non-voting member on the National Institute of Health Accelerating COVID-19 Therapeutic Interventions and Vaccines (NIH ACTIV) committee, which is tasked with managing clinical research for a variety of drug and antibody treatments for COVID-19.  Dr. Malone received his medical degree from the Northwestern Feinberg School of Medicine.  He completed the Harvard Medical School fellowship as a global clinical research scholar in 2016 and was scientifically trained at the University of California at Davis, the University of California at San Diego, and at the Salk Institute Molecular Biology and Virology laboratories.  He has served as an assistant and associate professor of pathology and surgery at the University of California

at Davis, the University of Maryland, and the Armed Forces University of the Health Sciences.  Dr. Malone's mission is to ensure vaccine safety, make sure that children are protected, stop and/or limit harmful vaccine mandates, and identify and teach about life-saving treatments for COVID-19 and other pandemics. [*Compl., ¶ 3*].

WaPo is a news organization that publishes the *Washington Post*.  Printed and circulated in Springfield, Virginia, the *Washington Post* has the largest print circulation (1,900,000+/week) in the Virginia/District of Columbia/Maryland area.  WaPo has more than 1,500,000 digital subscribers in the United States.  More than 19,700,000 people follow WaPo on Twitter. [*Compl., ¶ 4*].

**B.**   ***The Statements***

On January 24, 2022, WaPo published an article on its website, entitled "**A vaccine scientist's discredited claims have bolstered a movement of misinformation**". [*Compl., ¶ 1* (the "Article")].

In the Article, WaPo published and republished[1] the following facts:

---

[1]     As a preliminary matter, WaPo is liable for republishing the defamatory statements of third parties, including so-called "experts", in the Article. *See, e.g., Reuber v. Good Chemical News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991), *cert. denied*, 111 S.Ct. 2814 (1991) ("one who repeats a defamatory statement is as liable as the original defamer."); *see id. Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 386 (1973) (a "newspaper may not defend a libel suit on the ground that the falsely defamatory statements are not its own"); *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1298-1299 (D.C. Cir. 1988) ("The common law of libel has long held that one who republishes a defamatory statement 'adopts' it as his own, and is liable in equal measure to the original defamer"), *cert. denied*, 488 U.S. 825 (1988); *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60-61 (2nd Cir. 1980) ("one who republishes a libel is subject to liability just as if he had published it originally, even though he attributes the libelous statement to the original publisher, and even though he expressly disavows the truth of the statement."); *Olinger v. American Savings and Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969) ("The law affords no protection to those who couch their libel in the form of reports or repetition … [T]he repeater cannot defend on the ground of truth simply by proving that the source named did, in fact, utter the statement.").

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 1 | The headline falsely states that Dr. Malone's claims have been "discredited" and that his views constitute "misinformation" | WaPo | Subscribers/ Readers<br><br>Twitter | 01/24/2022 |
| 2 | "Robert Malone stood on the steps of the Lincoln Memorial before thousands of anti-vaccine and anti-mandate demonstrators Sunday, [and] the medical doctor and infectious-disease researcher repeated the falsehoods that have garnered him legions of followers" | WaPo | Subscribers/ Readers<br><br>Twitter | 01/24/2022 |
| 3 | "'Regarding the genetic covid vaccines, the science is settled,' [Malone] said in a 15-minute speech that referenced the Rev. Martin Luther King Jr. and John F. Kennedy.  'They are not working.'  The misinformation came two days after the Centers for Disease Control and Prevention released its first studies" | WaPo | Subscribers/ Readers<br><br>Twitter | 01/24/2022 |
| 4 | Dr. Malone's "claims and suggestions have been discredited … as not only wrong, but also dangerous" | WaPo | Subscribers/ Readers<br><br>Twitter | 01/24/2022 |
| 5 | "'There is a huge market for misinformation … The way he's framed in the conspiracy-theory world is that he's a courageous whistleblower rather than someone who is spreading misinformation — and it's only enhancing his profile'" | WaPo | Subscribers/ Readers<br><br>Twitter | 01/24/2022 |

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|---------------------|--------------|--------------|------|
| 6 | While Malone is a brilliant scientist who has a tremendous amount of experience and knowledge about vaccines, "there is reason to be concerned about how his newfound stardom could be a public health risk" | | | |
| 7 | "'there's a risk we're all facing when he's not accurately representing the information'" | WaPo | Subscribers/ Readers<br><br>Twitter | 01/24/2022 |
| 8 | "On [the Joe Rogan Experience], he promoted an unfounded theory called 'mass-formation psychosis,' telling Rogan that a 'third of the population [is] basically being hypnotized' into believing what the mainstream media and Anthony S. Fauci … report on the vaccines" | WaPo | Subscribers/ Readers<br><br>Twitter | 01/24/2022 |
| 9 | "'You have this individual [Dr. Malone] who has all these credentials and this history in the biomedical world, so that looks impressive.  And he's referencing a study that, on the face of it, may look impressive.  But you don't know that the study is fraudulent' … Malone has 'weaponized bad research'" | WaPo | Subscribers/ Readers<br><br>Twitter | 01/24/2022 |
| 10 | "With his increased profile in recent weeks, some are calling on him to take a step back and reflect on the damage his misinformation is causing" | WaPo | Subscribers/ Readers<br><br>Twitter | 01/24/2022 |

(each a "Statement", and collectively, the "Statements"). [*Compl., ¶ 8*].  In addition to

publishing the Article in print and on its website, WaPo and its agents conspicuously

published the Article to over 19,703,612+ Twitter followers.  On January 25, 2022, the WaPo Editorial Board accused Dr. Malone of spreading "dangerous lies", "dangerous falsehoods", "misinformation", and "untruths".  WaPo went so far as to accuse Dr. Malone of "leading his followers on a journey to illness, suffering and possible death".  All told, WaPo's falsehoods were published and republished millions of times. [*Compl., ¶¶ 9, 10*].

Dr. Malone alleges that the Statements falsely state or imply that he engaged in fraud, disinformation, misinformation, dishonest practices, that he lied to the American public, that he is incompetent and committed malpractice, that he lacks proper ethics, integrity and morality.  Dr. Malone states that WaPo exposed him to public ridicule, scorn, and contempt, and severely prejudiced him in his employment as medical professional and scientist.  In his complaint, Dr. Malone points out that readers of the Article and followers of WaPo on Twitter immediately understood the Statements to convey the intended and endorsed defamatory gist and meaning:  that Dr. Malone spreads misinformation, engages in fraud and disinformation, is a disreputable medical professional, *i.e.*, a quack,[2] that he should lose his license, and that he is dishonest and dangerous.   The complaint states that WaPo "ascribes to Dr. Malone conduct,

---

[2]      A "quack" is an "an ignorant, misinformed, or dishonest practitioner of medicine". [*See, e.g.,*  https://www.merriam-webster.com/dictionary/quack; *see also* http://www.oxforddictionaries.com/definition/english/quack (defining "quack" as "[a] person who dishonestly claims to have special knowledge and skill in some field, typically medicine")]; Restatement (Second) of Torts 573, comment c ("Statements that a physician is a drunkard or a quack, or that he is incompetent or negligent in the practice of his profession, are actionable."); *id. Barrett v. Rosenthal*, 40 Cal.4th 33, 51 Cal.Rptr.3d 55, 146 P.3d 510, 529 (2006) (doctors who claimed defamation in connection with actions of alternative health proponent, who had posted messages to newsgroups on the Internet referring to doctors as "quacks" were limited to pursuing actions against originators of allegedly defamatory Internet publications).

characteristics and conditions, including fraud, disinformation, misinformation, deception and dishonesty, that would adversely affect his fitness to be a medical professional and to conduct the business of a medical doctor." [*Compl., ¶¶ 1, 10, 11, 16*].

The complaint states that the Statements are materially false [*Id., ¶ 15*] and that WaPo published the Statements with actual malice: with knowledge of their falsity of reckless disregard for the truth. [*Id., ¶ 19*]. Dr. Malone further alleges that the Statements constitute defamation by implication. Dr. Malone claims that in the Article, WaPo juxtaposed a series of facts so as to imply a defamatory connection between them, including that Dr. Malone committed fraud. In addition, WaPo left out material facts, including the scientific basis of Dr. Malone's statements, in a way that intentionally conveyed a false meaning and that rendered the challenged Statements in the Article defamatory. According to the complaint, the Article's click-bait headline, its repeated emphasis upon "fraud" and "misinformation", and the manner in which the Article presents the discussion of COVID-19 and the "vaccines", including the use of photographs of Dr. Malone, permits a plausible inference that WaPo intended or endorsed the defamatory implication. [*Id., ¶¶ 23, 24*]. Finally, Dr. Malone asserts that the Statements are insulting and that WaPo's words, including the direct and powerful accusations of "fraud" and medical disinformation levelled at an acknowledged expert, are fighting words, which are actionable under § 8.01-45 of the Virginia Code. [*Id., ¶ 28*].

### III. <u>STANDARD OF REVIEW</u>

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th

Cir. 2019).  It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  "This pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Instead, to meet the Rule 8 standard and survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Nadendla v. WakeMed*, 24 F.4d 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *King*, 825 F.3d at 212.

## IV.  DISCUSSION

### A.  *Dr. Malone Sufficiently Alleges A Claim of Defamation*

Under Virginia law, the elements of a claim of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013).  In assessing whether a plaintiff has stated a cause of action for defamation, it is important to observe that while the Virginia Supreme Court requires more specific pleading in certain cases, defamation cases are not among them. *See Hatfill v. New York Times*, 416 F.3d 320, 329 (4th Cir. 2005) ("the usual standards of notice pleading apply in defamation cases.").

1.    *__WaPo's Statements Are Actionable__*

To be actionable, a statement must be "both false[3] and defamatory." *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652, 659 (E.D. Va. 2015) (quoting *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203 (2005)).   At the motion to dismiss stage in a defamation case, "a court must accept as false any statements which the Complaint alleges to be false." *Id.* (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)); *Morris v. Massingill*, 2002 WL 32639765, at * 2 (Norfolk Cir. 2002) ("Plaintiff is alleging that any statement that implies that he sexually abused a minor is false and, at this juncture and for the purposes of Demurrer, that is sufficient for Plaintiff to proceed.").   "Because the Court presumes falsity at this stage, the key actionability question … is whether the statements referenced in the Complaint are defamatory." *Goulmamine*, 138 F.Supp.2d at 659.[4]

Defamatory language "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Schaecher v. Bouffault*, 290 Va. 83, 92, 772 S.E.2d 589 (2015) (citation omitted).   At common law, defamatory words that "prejudice [a] person in his or

---

[3]     As to the element of falsity, "[t]he common law of libel takes but one approach ... regardless of the form of the communication.   It overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991).   "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Id.*   Therefore, "[a] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517 (quoting R. Sack, *Libel, Slander, and Related Problems* 138 (1980)).

[4]     The determination whether an allegedly defamatory statement is false "ordinarily presents a factual question to be resolved by a jury." *Hyland v. Raytheon Tech. Serv. Co.*, 277 Va. 40, 48, 670 S.E.2d 746 (2009).

her profession or trade" are actionable as defamation *per se. Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 132, 575 S.E.2d 858 (2003) (citing *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7, 82 S.E.2d 588 (1954) ("Every false and unauthorized imputation, spoken, written or printed which imputes to a business or professional man conduct which tends to injure him in his business or profession is libelous and actionable without allegation or proof of special damages.")).  Importantly, the Virginia Supreme Court has repeatedly emphasized that in order to render words defamatory and actionable, it is not necessary that the defamatory charge be in express or direct terms, "but it may be made indirectly, and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory.  Accordingly, a defamatory charge may be made by inference, implication or insinuation." *Carwile*, 196 Va. at 7, 82 S.E.2d at 592; *see id. Hyland*, 277 Va. at 47, 670 S.E.2d at 750 ("Defamatory statements may include statements made by inference, implication, or insinuation.") (numerous citations omitted).

Pure expressions of opinion, not amounting to 'fighting words,' cannot form the basis of an action for defamation." *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E.2d 97 (1985) (statement that plaintiff was "inexperienced" was "pure expression of opinion"). "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion", *Fuste*, 265 Va. at 132, 575 S.E.2d at 861, and "rhetorical hyperbole, even if insulting, offensive, or otherwise inappropriate, is not actionable." *Choi v. Kyu Chul Lee*, 312 Fed.Appx. 551, 553 (4th Cir. 2009) ("the jury found in favor of Choi with regard to the statements describing Choi as a thug and a gangster.  On appeal, the appellants contend that those statements should be viewed, as a matter of law, as non-

actionable opinion or hyperbole.  We disagree.") (citation omitted).  The United States Supreme Court has not provided categorical protection for _all_ expressions of opinion. Rather, the Supreme Court has held that a statement merits protection only if it "cannot 'reasonably [be] interpreted as stating actual facts about an individual.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (alteration in original) (quoting *Hustler Magazine, Inc. v. Falwell*, 495 U.S. 46, 50 (1988)).  To determine whether a statement posits facts, the United States Court of Appeals for the Fourth Circuit directs courts to look to the actual language used, as well as the context and general tenor of the statement. *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (citing *Milkovich*, 497 U.S. at 21)).  The Supreme Court of Virginia similarly requires an examination of context. *Hyland*, 277 Va. at 47-48, 670 S.E.2d at 751 ("The requirement that an allegedly defamatory statement be considered as a whole also is vital to a determination of the truth or falsity of a defamation claim, because defamatory statements may be made by implication, inference, or insinuation.  Thus, the factual portions of an allegedly defamatory statement may not be evaluated for truth or falsity in isolation, but must be considered in view of any accompanying opinion and other stated facts.") (citations omitted).  In *Goulmamine v. CVS Pharmacy, Inc.*, the District Court observed that there are "two caveats to the 'opinions cannot be defamatory' rule."  First, "statements [of opinion] may be actionable if they have a provably false connotation and are thus capable of being proven true or false." 138 F.Supp.3d at 660.  Second, a statement of opinion may be actionable when it "reasonably can be construed as a statement of fact" because "it is 'laden with factual content' and the underlying facts are allegedly false." *Id.*  Bearing these two caveats in mind, the Court in *Goulmamine* held that many of the statements

claimed to be "opinions" were actionable, "either because they may be proven false by an expert witness or because they are laden with factual content and the underlying facts are alleged to be false." *Id.* (statements of opinion regarding Goulmamine or Goulmamine's relationship with his patients: "he is bad news," variations on "you should find another doctor" or "your doctor won't be in business much longer," and "he may lose his license" were actionable).

To falsely state that a professional has spread "misinformation" is actionable defamation.  In *Project Veritas v. Cable News Network, Inc.*, the complaint alleged that defendant, CNN, broadcast the following statements: (1) that social media companies were "cracking down to stop the spread of misinformation and to hold some people who are spreading it accountable"; (2) "For example, Twitter has suspended the account of Project Veritas"; and (3) "This is part of a much broader crackdown as we mentioned by social media giants on accounts that are promoting misinformation."   The District Court found that CNN's statements were "plausibly defamatory when read as a whole" because they created "an implied suggestion that Project Veritas was suspended for spreading misinformation on the Twitter platform." 591 F.Supp.3d 1322, 1330 (N.D. Ga. 2022); *see id. Peterka v. Setter*, 2020 WL 12604754, at * 3-4 (W.D. Pa. 2020) (statements in article, including that plaintiff "appear[ed] to have been spreading a lot of misinformation about other organizations for his own financial gain," that plaintiff appeared to have "commit[ed] fraud," and that he appeared to "maliciously spread misinformation/deception" through a LinkedIn post, were defamatory and actionable – "given that the statements allegedly ascribe to Peterka conduct, character, or a condition that would adversely affect his fitness for the proper conduct of his business, Plaintiffs

have sufficiently pled the capability of defamatory meaning");[5] *compare Fuste*, 265 Va. at 133, 575 S.E.2d at 861 ("the alleged statements that Drs. Fuste and Vanden Hoek 'abandoned' their patients and that there were 'concerns about their competence' not only prejudice the doctors in the practice of their profession, but also contain 'a provably false factual connotation.'") (citation omitted); *Cashion v. Smith*, 286 Va. 327, 337, 749 S.E.2d 526 (2013) ("statement that the patient 'could have made it with better resuscitation' directly attributes the patient's death to Dr. Cashion, insinuating that he either failed to perform some action necessary to the patient's recovery or acted affirmatively to prevent it.  Insinuations may constitute defamatory statements.");[6] *see also Gilmore v. Jones*, 370 F.Supp.3d 630, 673 (W.D. Va. 2019) ("Creighton's insinuation that Gilmore had foreknowledge of a violent attack and filmed it for clandestine political purposes is precisely the sort of factual assertion that would tend to 'harm the reputation of another as to lower him in the estimation of the community,' 'deter third persons from associating' with him, and make him 'appear odious' or 'infamous.'") (quotation and citation omitted); *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652, 659 (E.D. Va. 2015) (stating that a physician has committed misconduct worthy of losing his license to

---

[5]        In *Klayman v. Cable News Network*, the defamation claims arose from an article that included the following statement: "Larry Klayman, a right-wing lawyer, has a history of pushing misinformation and representing conspiracy theorists".  The District Court found that CNN's statement that the plaintiff was a "right-wing lawyer" was substantially true based on the allegations in the complaint.  The Court did *not* rule that the statement that plaintiff pushed "misinformation" was non-defamatory and, therefore, tacitly recognized that it was not. 2022 WL 3031265, at * 3 (S.D. Fla. 2022).

[6]        The *Cashion* Court explained that [w]hether the quality of Dr. Cashion's treatment caused or even contributed to the patient's death is an allegation of fact capable of being proven true or false, such as through expert opinion testimony." 286 Va. at 337, 749 S.E.2d at 532.  In this case, whether the genetic COVID vaccines work or do not work is a matter subject to being proven true or false through expert opinion testimony.

practice medicine or dispense controlled substances is sufficiently similar to suggesting an attorney has committed conduct worthy of disbarment); *Echtenkamp v. Loudoun County Public Schools*, 263 F.Supp.2d 1043, 1064 (E.D. Va. 2003) (statements that "could be construed to either imply or to state directly that plaintiff lacks integrity or is unfit for her profession" were actionable).

Applying these principles, it is apparent that the Statements about Dr. Malone are actionable. According to the United States Department of Homeland Security ("DHS"), "misinformation" is "false information shared with others without the intent to mislead", *i.e.*, constructive fraud. "Disinformation", by comparison, is "manufactured information that is deliberately created or disseminated with the intent to cause harm", *i.e.*, actual fraud. [https://www.dhs.gov/sites/default/files/publications/ia/ia_combatting-targeted-disinformation-campaigns.pdf, p. 4]. According to DHS, the spread of misinformation has helped to create a heightened terrorist threat to the United States homeland. [https://www.dhs.gov/sites/default/files/ntas/alerts/22_0207_ntas-bulletin.pdf; https://www.cisa.gov/mdm; https://dailycaller.com/2022/02/09/department-homeland-security-misinformation-covid-19-election-fraud-possible-terrorist-threat/]. Whether Dr. Malone engaged in misinformation or disinformation is a matter that is subject to proof. Like the false accusations in *Nunes v. WP Company*, 2021 WL 3550896 at * 4, a reasonable juror could conclude that a medical doctor and renowned scientist who knowingly spreads baseless claims and misinformation is ridiculous or unfit for his profession. Whether Dr. Malone lied, published falsehoods, committed malpractice, or created dangerous risks to patients and the public are also capable of being proven false. These accusations are universally actionable. *See, e.g., Ingles v. Dively*, 246 Va. 244,

250, 252-253, 435 S.E.2d 641 (1993) ("Dively relied on the following evidence to support his defamation claim: … Ingles came to the marina and 'called Mr. Dively a thief, a liar, a forger' … [W]e reject Ingles's contention that these … statements were not defamatory as a matter of law."); *see also Rosenthal v. R.W. Smith Company*, 260 F.Supp.3d 588, 596 (W.D. Va. 2017) ("Handley also called Rosenthal a 'con-man' and Gillespie called Rosenthal 'a liar and a fraud'").   Moreover, whether the putative "vaccines" work rests on a core of objective evidence. *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 fn. 2 (9th Cir. 1990), *cert. denied*, 499 U.S. 961 (1991) (holding that statement that a rain repellant product "didn't work" rests on "a core of objective evidence" because a product can be tested objectively to determine whether it performs the functions that it claims to perform—rain repellent either is or is not invisible on one's windshield, it does or does not increase all-around visibility, and rain either does or does not disperse on contact).

Unlike *Edwards v. Schwartz*, this is not a case where the parties operate competing blogs and various social media accounts that they use "to critique, ridicule, cast aspersions upon, and question each other's motives and/or intentions." 378 F.Supp.3d 468, 510-511 (W.D. Va. 2019).  WaPo is not a "partisan" or an "advocate" in a "heated and emotional public health debate".  WaPo holds itself out as a trusted purveyor of **news**.  Readers expect "scrupulous factual accuracy" from WaPo.  Unlike the letter in *Edwards*, which was "replete with emotional and polemical language, rhetorical hyperbole, and unmistakable indicia of partisanship", the Article in this case exhibits the pretense of objectivity and disinterestedness.  WaPo does not express a "subjective view, an interpretation, a theory, conjecture or surmise".  ***WaPo accuses Dr. Malone of fraud***

(*i.e.*, misinformation and disinformation), plain and simple, and that is how reasonable readers of the Article understood the Statements.  WaPo's Statements were understood by readers to suggest that Dr. Malone is a person lacking honesty and integrity who should be shunned or excluded by those who seek information and opinion upon which to rely. In context, the words used by WaPo literally mean that Dr. Malone made a series of assertions knowing them to be false.  The language in the Article is not "loose" or "figurative" or "cautionary".  The words were not and are not "plainly understood as an outpouring of exasperation and intellectual outrage over [plaintiff's] ability to gain traction for ideas that ... [defendant] believes are seriously misguided, and not as a literal assertion of fact." *Arthur v. Offit*, 2010 WL 883745, at * 5 (E.D. Va. 2010).  WaPo's accusations of fraud are not "merely an imaginative expression of the contempt felt toward [an] adversary". *Id.* at * 5.

As the *Edwards* Court agreed, "the presence of a public debate does not provide license to intentionally publish falsehoods injurious" to the reputation of another.  In other words, "the presence of a controversy does not provides carte blanche to publish falsehoods that impugn the reputation of another." *Edwards*, 378 F.Supp.3d at 509-511. WaPo is a national news organization.  It should be held accountable for its false statements.

### 2.    *WaPo Published The Statements With Actual Malice*

The requisite intent a plaintiff must prove in a defamation action depends upon the plaintiff's status as a private individual or public figure, and the damages sought. Under Virginia law, a private individual may recover upon proof by a preponderance of the evidence that the defendant either knew the publication to be false, "or believing it to

be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." The negligence standard is applicable to "media and non-media defendants alike". *Gazette, Inc. v. Harris*, 229 Va. 1, 15, 325 S.E.2d 713 (1985). As to a public figure, on the other hand, a plaintiff must plausibly allege that the defendant made the statement with "actual malice"—that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) (cited in *Jordan*, 269 Va. at 577, 612 S.E.2d at 207)). "To recover punitive damages, all defamation plaintiffs must show actual malice". *Jordan*, 269 Va. at 577, 612 S.E.2d at 207 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974)); *Vaile v. Willick*, 2008 WL 294477, at * 6 (W.D. Va. 2008) ("there is no heightened pleading standard for punitive damages, only a "short and plain statement of the claim" under Federal Rule of Civil Procedure 8(a). Plaintiff has alleged that Defendants acted with actual malice in sending the false and defamatory letters, meaning Defendants published the statements with knowledge of their falsity or with reckless disregard for the truth. These allegations plainly state a claim for punitive damages.").[7]

"The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of

---

[7]      Dr. Malone is a limited-purpose public figure. He challenges and preserves for appeal the continued viability of *New York Times v. Sullivan*. He contends that the proper fault standard for a public figure is negligence. *See, e.g., Berisha v. Lawson*, 141 S.Ct. 2424 (2021) (Thomas, J. & Gorsuch, J., dissenting); *McKee v. Cosby*, 139 S.t. 675 (2019) (Thomas, J., dissenting).

the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration." *Herbert v. Lando*, 441 U.S. 153, 164 fn. 12 (1979) (quotation omitted); *see Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) (although "courts must be careful not to place too much reliance on such factors," it "cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry"); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn. 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice.").

As *Herbert* suggests, actual malice is typically shown by an "accumulation" of evidence and inferences. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 183 (2nd Cir. 2000) (in order to infer actual malice, the facts alleged "should provide evidence of 'negligence, motive and intent such that *an accumulation of the evidence and appropriate inferences* supports the existence of actual malice.'") (quoting *Bose Corp. v. Consumers Union of the United States*, 692 F.2d 189, 196 (1st Cir. 1982) (emphasis added in original)); *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2nd Cir. 1969) ("There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity."); *Gilmore*, 370 F.Supp.3d at 673 ("Although neither the pursuit of a preconceived narrative nor a failure to observe journalistic standards is alone ultimately enough to establish actual malice, Gilmore's factual allegations, taken together, are sufficiently plausible to support an inference that

Creighton published statements about him with actual malice."); *Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly provide evidence of actual malice, the court believes that proof of all three is sufficient to create a genuine issue of material fact.  Plaintiff, however, goes further. Pointing to Erdely's own reporting notes [obtained in discovery], plaintiff also forecasts evidence that could lead a reasonable jury to find that Erdely had 'obvious reasons to doubt [Jackie's] veracity' or 'entertained serious doubts as to the truth of [her] publication.'").  Because actual malice "is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted," *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2nd Cir. 1987), a defendant cannot "automatically insure a favorable verdict by testifying that he published with a belief that the statements were true." *St. Amant*, 390 U.S. at 732.

Dr. Malone's complaint alleges sufficient facts, viewed in the light most favorable to him at this stage, to plausibly show that WaPo published the Statements with actual malice.  First, Dr. Malone alleges that WaPo knew from prior reporting that Dr. Malone's statements about COVID, the "vaccines" and the "vaccine" mandates were 100% factual and correct, and that the accusations of "misinformation", "fraud" and lying were false. *St. Amant*, 390 U.S. at 732 ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, [or] is the product of his imagination"); *Lemelson v. Bloomberg, L.P.*, 903 F.3d 19, 25 (1st Cir. 2018) ("Actual malice can be shown where the publisher is in possession of information that seriously undermines the truth of its story"); *Nunes*, 2021 WL 3550896, at * 5 ("A

newspaper's *own* prior (and correct) reporting that is inconsistent with its later (and incorrect) reporting could certainly give the paper reason to seriously doubt the truth of its later publication").  Second, given Dr. Malone's stature, which was well-known to WaPo, the accusations of disinformation and misinformation are so highly improbable that only a reckless person would put them in circulation. *St. Amant*, 390 U.S. at 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, … when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation."); *US Dominion, Inc. v. Powell*, 554 F.Supp.3d 42, 63 (D. D.C. 2021) ("a reasonable juror could conclude that the existence of a vast international conspiracy that is ignored by the government but proven by a spreadsheet on an internet blog is so inherently improbable that only a reckless man would believe it."); *Stern v. Cosby*, 645 F.Supp.2d 258, 279 (S.D.N.Y. 2009) ("printing a claim that Birkhead and Stern had sex would be a way to make it to the top of the bestseller list, and a reasonable jury could find that Cosby ignored the inherently improbable nature of the Statement in her zeal to write a blockbuster book").  Third, WaPo blindly relied upon and republished statements of "sources" that WaPo knew were unreliable, including sources known to be wildly biased and to have an axe to grind against Dr. Malone and who were intent on ruining his reputation. *See, e.g., AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090, at * 8 (E.D. Va. 2015) ("If, in fact, TME knew of the bad blood between Plaintiffs and Defendant Cartner, it would have indeed had obvious reason to doubt Cartner's veracity and the accuracy of his statements given the blatantly hostile and sarcastic tone of the Article.").  Finally, where, as here, a defendant republishes a statement after the defendant has been notified that the plaintiff contends that the

statement is false and defamatory the defendant's actions may be treated as evidence of reckless disregard. *Nunes v. Lizza*, 12 F. 4th 890, 901 (8th Cir. 2021) ("'Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard.' Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977)).

Here, the "aggregate" of Dr. Malone's allegations suffice to show that WaPo published the Statements with actual malice. *Bolden v. Morgan Stanley & Co.*, 765 F.Supp. 830, 834 (S.D.N.Y. 1991) (the "aggregate of plaintiff's evidence" showed actual malice). The motion to dismiss should be DENIED.

**B.     _Defamation by Implication_**

In order to state a claim for defamation by implication under Virginia law, a plaintiff must allege: "(1) that the defendant[] made the statements alleged in the complaint, (2) that the statements, even if facially true, were designed and intended by the defendant[] to imply [the defamatory meaning], (3) that in the light of the circumstances prevailing at the time they were made, the statements conveyed that defamatory implication to those who heard or read them, and (4) that the plaintiff suffered harm as a result." *Pendleton v. Newsome*, 290 Va. 162, 175, 772 S.E.2d 759 (2015).[8]

WaPo argues that Dr. Malone's defamation by implication claims fails "because Dr. Malone does not satisfy the heightened burden that is constitutionally required at the pleading stage for a defamation by implication claim." [*WaPo Mem., p. 27*].   Because

---

[8]       In *Pendleton*, the Virginia Supreme Court ruled that a "fair and just inference" to be drawn from defendants' statements was that plaintiff's side of the story was "misinformation". *Id.* at 173, 772 S.E.2d at 764.   It is clear from *Pendleton* that accusing a person of spreading "misinformation" is capable of a defamatory meaning.

defamatory speech falls outside the protection of the First Amendment, the *Pendleton* Court found that a First Amendment analysis was "inapposite in a case in which a plaintiff must allege and ultimately prove that the defendant intended his words to express a defamatory innuendo, that the words actually did so, and that the plaintiff was actually defamed thereby." *Id*. at 174, 772 S.E.2d at 765.  The Virginia Supreme Court in *Pendleton* considered and expressly ***rejected*** the argument that "a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true … ***Nor have we held that the defendant's words must, by themselves, suggest that the author intends or endorses the allegedly defamatory inference***." *Id*. at 173-174, 772 S.E.2d at 764 (emphasis added).  In *Pendleton*, the Virginia Supreme Court held that "[m]otive, intent, scheme, plan or design are issues of fact that may be proved by circumstantial evidence as well as by direct evidence." *Id*. at 174, 772 S.E.2d at 765.

Even if Virginia requires an "affirmative" suggestion that the author intends or endorses the allegedly defamatory inference – which it does not – Dr. Malone states facts which show that WaPo intended or endorsed the defamatory implication. [*Compl., ¶¶ 10, 23*; *compare e.g., Nunes*, 12 F.4th at 899; *Project Veritas*, 591 F.Supp.3d at 1330-1331].

**C.**   **_Dr. Malone Alleges A Claim of Insulting Words_**

Section 8.01-45 of the Virginia Code (1950), as amended, provides that "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace."

> "The design of the statute is to prevent breaches of the peace, to discourage offensive and excessive freedom in the use of that unruly member, the tongue, to inflict punishment therefor, and by subjecting those who are so hasty of temper and inconsiderate of the feelings of others as to insult them to such actual and punitive damages as may be awarded by a jury".

*Hines v. Gravins*, 136 Va. 313, 112 S.E. 869, 871 (1926) (defendant's statements implied that plaintiff was a "crooked and dishonest person" – demurrer to insulting words claim was properly overruled).

"Whether or not the words used are insulting is a jury question, depending on whether from 'their usual construction and common acceptation' they may be 'construed as insults, and tend to violence and breach of the peace.'  The motive which actuated the person using the words is not material, except upon the questions of malice and the measure of damages." *Cook v. Patterson Drug Co.*, 185 Va. 516, 521, 39 S.E.2d 304 (1946).  In *Allen & Rocks, Inc. v. Dowell*, the Virginia Supreme Court clarified that § 8.01-45 "plainly requires that the words used must not only be insults, but they must also 'tend to violence and breach of the peace.'" 252 Va. 439, 441, 477 S.E.2d 741 (1996). The defendant (Rocks) made the following statements about the plaintiff (Dowell):

> "Rocks stated that Dowell's accomplishments and interpersonal skills with management were unsatisfactory; that Dowell did not communicate well with Rocks; that Dowell had been discharged because of his performance; and  that Rocks, were he in the shoes of a potential employer, would not hire Dowell."

The Supreme Court ruled that these particular words were not such "as tended to violence or breach of the peace." 252 Va. at 443, 477 S.E.2d at 743; *but compare Jennings v. Jones*, 2005 WL 4827429, at * 1, 3 (Petersburg Cir. 2005) ("insinuating to the Plaintiffs either the incompetent or illegal performance of their duties, were such as may have provoked reasonable persons to breaches of the peace, and the Plaintiffs have so alleged in their Motions for Judgment" … [T]he alleged statements are actionable under the 'fighting words' statute, Va.Code § 8.01-45.  They meet all the requirements of common-law defamation, and it is possible that a reasonable jury might find that the statements

were such as might fairly be expected by reasonable people to tend towards violence or a breach of the peace.").

In *Chaffin v. Lynch*, the plaintiff's complaint alleged that "the words used by the defendant in charging the plaintiff, in his published card, with acts of misrepresentation, and as having a known character as a liar, and that he could not be recognized by the defendant as a gentleman, and also that the words used in the certificate of Rowe and Brown, to the effect that they would not believe the plaintiff on oath, etc., were false and libelous, and are such words as are usually construed as insults, and tend to violence and breach of the peace". The Virginia Supreme Court found that plaintiff's complaint was not demurrable and upheld a jury for plaintiff. 83 Va. 106, 110-115, 1 S.E. 803 (1887). In *Zayre of Va., Inc. v. Gowdy*, a store security officer said, "Hey, young ladies, let me see what you have in that suitcase" and "Well, where is the sales ticket?" On appeal from a jury verdict for plaintiffs, the Virginia Supreme Court ruled that the evidence was "sufficient to support the jury's finding that the girls had been falsely accused of larceny and that the words used by the security officer, from their usual construction and common acceptation, were insulting and tended to violence and breach of the peace." 207 Va. 47, 49-50, 147 S.E.2d 710 (1966). In *Pacquette v. Nestle USA, Inc.*, the Court denied defendant's motion to dismiss an insulting words claim. "The Plaintiff alleged that the Defendant accused him of criminal dishonesty during his termination interview. The Plaintiff further alleged that the Nestlé's Disciplinary Action Form, which summarized the reasons for Pacquette's firing, included a second false accusation that he had attempted to remove materials without a pass on October 11, 2000." 2007 WL 1343794, at * 3 (W.D. Va. 2007) ("While I find the Plaintiff's language overly colorful, a

reasonable jury might find that accusing someone of theft or dishonesty would provoke violence.").

Measured by the controlling cases, there is no question that Dr. Malone has stated a viable insulting words claim against WaPo upon which relief can be granted. *See, e.g., Waddle v. Claughton*, 2019 WL 1049388, at * 5 (W.D. Va. 2019) ("Because Plaintiff has alleged a statement that is insulting *per se*, she has stated a claim under the fighting words statute.").   WaPo's motion to dismiss Count III (Insulting Words) should be DENIED.

**D.**      ***Section 8.01-223.2 Does Not Immunize WaPo***

Section 8.01-223.2(A) provides that a person "shall be immune from civil liability for a … claim of defamation[9] based solely on statements … regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party".   ***However***, § 8.01-223.2(A) goes on to provide that "the immunity provided by this section shall not apply to any statements made with actual ***or constructive*** knowledge that they are false or with reckless disregard for whether they are false." (Emphasis added).

WaPo's motion to dismiss pursuant to § 8.01-223.2 should be DENIED for several reasons.   First, the immunity provided by § 8.01-223.2 does not apply because WaPo's statements were made with actual ***or*** constructive knowledge that they are false or with reckless disregard for whether they are false.   Dr. Malone alleges that WaPo had actual knowledge that Dr. Malone did not engage in the misconduct charged in the articles. *See, e.g., Steele v. Goodman*, 382 F.Supp.2d 403, 427 (E.D. Va. 2019) ("the

---

[9]      By its plain language, § 8.01-223.2 does not apply to Dr. Malone's insulting words claim.

Amended Complaint is replete with assertions that Goodman made the multitude of statements with actual knowledge of their falsity"); *Vivera Pharmaceuticals, Inc. v. Gannett Co., Inc.*, 2021 WL 6550461 at * 4 (Fairfax Cir. 2021) ("Even if the statements are privileged, Vivera's claims should not be dismissed because the complaint properly alleges malice as described above.  Therefore, it would be premature to dismiss Vivera's claims under the theory of qualified privilege.").  Second, the analytical format for interpreting § 8.01-223.2 "follows the Virginia Supreme Court's model for qualified privilege." *Alexis v. Kamras*, 2020 WL 7090120, at * 21 (E.D. Va. 2020).  Whether the privilege is overcome by virtue of a defendant's improper mental state (i.e., a reckless disregard for the truth or actual or constructive knowledge of a statement's falsity) "is a jury question". *Id.* ("Here, the Court finds that statutory immunity does attach to the statements made by Kamras; however, the question of whether Kamras lost that immunity by virtue of an improper mental state is a question of fact that should go to a jury.").  Here, as in *Kamras*, Dr. Malone is entitled to discovery and a trial by jury.[10]

---

[10]      Even if there was a basis to grant WaPo's motion to dismiss pursuant to § 8.01-223.2, the Court should deny WaPo's request for fees.  Courts have sometimes looked to whether an award of attorney's fees is necessary to address an imbalance in resources or to protect a defendant from a plaintiff with an unfair financial advantage, or whether an award of fees would unfairly discourage other plaintiffs from bringing colorable claims. *Fairfax v. CBS Broadcasting, Inc.*, 534 F.Supp.4d 581, 602 (E.D. Va. 2020).  As amply demonstrated in this case, WaPo is well positioned to defend itself and is not a financially vulnerable victim, outmatched by Dr. Malone's resources.  An award of fees under the circumstances of this case would have too high a potential to deter future litigants with colorable claims against WaPo. *Id.*  Further, Dr. Malone's allegations are clearly not frivolous or made in bad faith. *Id.* at 601 ("Though legally insufficient to state a claim, Fairfax's allegations are not so 'groundless, frivolous, or unreasonable' or so lacking in a substantial basis in fact and law as to warrant an award of fees"); *see id. Flanagan v. Pittsylvania County, Virginia*, 2020 WL 2754754, at * 10 fn. 6 (W.D. Va. 2020) ("Flanagan's theory of defamation is not so meritless such that awarding fees would serve the purposes of § 8.01-223.2.").

## <u>CONCLUSION AND REQUEST FOR RELIEF</u>

For the reasons stated above and at any hearing of this matter, Dr. Malone respectfully requests the Court to deny WaPo's motion to dismiss.


DATED:          November 28, 2022


DR. ROBERT W. MALONE


By:   */s/ Steven S. Biss*
           Steven S. Biss (VSB # 32972)
           300 West Main Street, Suite 102
           Charlottesville, Virginia 22903
           Telephone:     (804) 501-8272
           Facsimile:     (202) 318-4098
           Email:         stevenbiss@earthlink.net

           *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2022 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By: ___*/s/ Steven S. Biss*_____
   Steven S. Biss (VSB # 32972)
   300 West Main Street, Suite 102
   Charlottesville, Virginia 22903
   Telephone: (804) 501-8272
   Facsimile: (202) 318-4098
   Email:  stevenbiss@earthlink.net

   *Counsel for the Plaintiff*