# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DR. ROBERT W. MALONE, | CASE NO. 3:22-cv-00046 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| WP COMPANY, LLC, D/B/A THE WASHINGTON POST, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

This case comes to the Court on Defendant the Washington Post's motion to dismiss for failure to state a claim.[1] Plaintiff Dr. Robert Malone sued Defendant for defamation, defamation by implication, and insulting words. For multiple reasons, the Court will grant Defendant's motion to dismiss. First, the Court will dismiss Plaintiff's defamations claims, concluding that Defendant's challenged statements are not actionable and that, even if they were, the Post lacked actual malice. Second, for similar reasons, the Court will dismiss Plaintiff's insulting words claim. And finally, the Court will hold that Virginia's anti-SLAPP (strategic lawsuit against public participation) statute provides Defendant immunity in this case.

## BACKGROUND

The following facts are alleged in Plaintiff's complaint, Dkt. 1, and must be assumed true for purposes of resolving Defendant's motions to dismiss. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review). Plaintiff "is a licensed medical doctor," an "internationally recognized scientist/physician," and "a world-renowned

---

[1] This matter has been fully briefed, and no hearing has been requested. It is, therefore, ripe for disposition.

1

scientist and expert in the field of mRNA technology." Dkt. 1 ¶¶ 1, 3. Furthermore, as Plaintiff acknowledges, he is "a limited-purpose public figure," engaged in public health advocacy. Dkt. 17 at 18 n.7. He describes his "mission" as "ensur[ing] vaccine safety, mak[ing] sure that children are protected, stop[ping] and/or limit[ing] harmful vaccine mandates, and identify[ing] and teach[ing] about life-saving treatments for COVID-19 and other pandemics." Dkt. 1 ¶ 3. In furtherance of this mission, Plaintiff has made multiple public statements and appearances. In fact, the sole article in question, which was published on January 24, 2022, covered a speech Plaintiff gave "on the steps of the Lincoln Memorial" about COVID-19.[2] Dkt. 10 (Ex. A) at 2.

That article contains both a discussion of Plaintiff's "impressive credentials in a career spanning more than three decades" and critiques of his recent views about COVID-19 vaccines. *Id.* at 4. Unsurprisingly, Plaintiff focuses on the critiques. Specifically, he claims that the following statements are defamatory:[3]

- Statement 1: The article's headline stating that Dr. Malone's "discredited claims have bolstered a movement of misinformation." Dkt. 10 (Ex. A) at 2.

- Statement 2: The opening lines of the article observing that "Robert Malone stood on the steps of the Lincoln Memorial before thousands of anti-vaccine and anti-mandate

---

[2] The Washington Post article at issue, which Defendant attached as an exhibit to its motion to dismiss, is incorporated into Plaintiff's complaint by reference. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (explaining that at the 12(b)(6) stage, a court may look at the pleading and documents referred to in the complaint which are central to the claim).

[3] Plaintiff's complaint recites partial quotations from the article. Dkt. 1 at 6–8. For added context, this decision will include the complete quotations. *See Virginia Citizens Def. League v. Couric*, 910 F.3d 780, 786 (4th Cir. 2018) (noting that potentially defamatory statements must be considered "in context" of the entire article).

demonstrators Sunday, [and] the medical doctor and infectious-disease researcher repeated the falsehoods that have garnered him legions of followers." *Id.* at 2.

- Statement 3: A portion of the article that reads: "'Regarding the genetic covid vaccines, the science is settled,' [Malone] said in a 15-minute speech that referenced the Rev. Martin Luther King Jr. and John F. Kennedy. 'They are not working.' The misinformation came two days after the Centers for Disease Control and Prevention released its first studies based on real-world data showing that coronavirus vaccines provide strong protection against hospitalization…." *Id.*

- Statement 4: An observation that Plaintiff's "claims and suggestions have been discredited and denounced by medical professionals as not only wrong, but also dangerous." *Id.* at 3.

- Statement 5: A statement by an assistant professor of psychology and neural science at New York University that "[t]here is a huge market for misinformation… The way he's framed in the conspiracy-theory world is that he's a courageous whistleblower rather than someone who is spreading misinformation—and it's only enhancing his profile." *Id.*

- Statements 6 and 7: Comments by a former colleague of Plaintiff's that "while Malone is 'a brilliant scientist who has tremendous amounts of experience and knowledge about vaccines,' there is reason to be concerned about how his newfound stardom could be a public health risk," adding that "'there's a risk we're all facing when he's not accurately representing the information.'" *Id.* at 3–4.

- Statement 8: The article recounting that "[o]n [the *Joe Rogan Experience*], [Plaintiff] promoted an unfounded theory called 'mass-formation psychosis,' telling Rogan that a 'third of the population [is] basically being hypnotized' into believing what the

- mainstream media and Anthony S. Fauci, the nation's top infectious-disease expert and chief medical adviser to President Biden, report on the vaccines." *Id.* at 4.

- Statement 9: A comment by the Canada research chair in health law and policy at the University of Alberta stating that "'you have this individual who has all of these credentials and this history in the biomedical world, so that looks impressive. And he's referencing a study that, on the face of it, may look impressive. But you don't know that the study is fraudulent.'" *Id.* at 7. The article also noted that the same scientist added that Plaintiff "has 'weaponized bad research.'" *Id.*

- Statement 10: A statement that "[w]ith his increased profile in recent weeks, some are calling on him to take a step back and reflect on the damage his misinformation is causing." *Id.* at 8.

Plaintiff alleges that the above statements "represent an egregious attack on Dr. Malone's character, experience, standing in the medical community, and the truth." Dkt. 1 ¶ 11. He cites various tweets that, *inter alia*, demonstrate the criticism Plaintiff has received. *Id.* ¶ 10. And he asserts that, as a result of the Washington Post story, he has "suffered damage to his property, business, trade, profession and occupation." *Id.* ¶ 18.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *King*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of

4

defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

## ANALYSIS

Plaintiff advances three related claims against Defendant: (1) defamation, (2) defamation by implication, and (3) insulting words. Dkt. 1 ¶¶ 13–29. Defendant, meanwhile, counters that— in addition to other dispositive arguments discussed below—Plaintiff's complaint is "an affront to both the First Amendment and the CDC's vital medical guidance during a pandemic that killed more than one million Americans." Dkt. 10 at 6. Because Plaintiff has not stated a plausible claim to relief, the Court will dismiss Plaintiff's claims on multiple grounds.

**I.      Plaintiff's defamation claim fails because Defendant's allegedly defamatory statements are not actionable, and even if they were, Defendant did not act with actual malice.**

In Virginia, the elements of a defamation claim are: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018) (citing *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015)). Here, there is little dispute that the statements at issue were published. *See* Dkt. 10 at 11; Dkt. 17 at 4. But the

5

parties debate whether the statements are actionable and whether they were published with the requisite intent. Taking all Plaintiff's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, *King*, 825 F.3d at 212, Plaintiff's defamation claim fails because the challenged statements were neither actionable nor published with the requisite intent.

>  a. *The statements at issue are not actionable because they are opinions in a scientific debate and, thus, not demonstrably false.*

When analyzing a defamation claim, courts look only to the statements that the plaintiff has specifically identified as defamatory. *Compel v. Citi Mortg., Inc.*, No. 1:04-cv-1377, 2005 WL 4904816, at *1 (E.D. Va. Feb. 23, 2005). "An 'actionable' statement [must be] both false and defamatory." *Schaecher*, 772 S.E.2d at 594 (citing *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013)). To be defamatory, the challenged words must tend "'to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Schaecher*, 772 S.E.2d at 594 (quoting Restatement (Second) of Torts § 559). And to be false, a statement must "'reasonably be interpreted as stating actual facts,' as well as … 'contain[ing] a provably false factual connotation.'" *Arthur v. Offit*, No. 1:09-cv-1398, 2010 WL 883745, at *4 (E.D. Va. Mar. 10, 2010) (quoting *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 137 (Va. 1998)).

In this case, Defendant does not dispute that the identified statements are defamatory. Rather, Defendant contends the statements are not false and/or do not have a provably false factual connotation. *See* Dkt. 10 at 15–21. In particular, Defendant posits that the "statements at issue are constitutionally protected statements of opinion" and that, even if they were not, they are "provably true." *Id.* at 15.

As the Eastern District of Virginia recently observed, "because statements must be false to be actionable, it follows that statements that are not factual assertions cannot be the basis for

6

defamation liability. The typical example of this is an opinion." *McCullough v. Gannett, Co.*, No. 1:22-cv-1099, 2023 WL 3075940, at *6 (E.D. Va. Apr. 25, 2023). To be sure, not all opinions are shielded from defamation liability. *See, e.g.*, *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990) (noting that the statement "'[i]n my opinion, John Jones is a liar'" is an actionable opinion because the speaker "implies knowledge of facts which lead to the conclusion that Jones told an untruth"). But some opinions are protected: when an opinion is uttered in the "marketplace of ideas" such that the statement might "'be corrected by discussion,'" the First Amendment will typically protect it. *Id.* (citation omitted); *see also Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985) ("The First Amendment to the Federal Constitution and article 1, section 12 of the Constitution of Virginia protect the right of the people to teach, preach, write, or speak any such opinion, however ill-founded, without inhibition by actions for libel and slander."). Indeed, the First Amendment shields statements "relating to matters of public concern which [do] not contain a provably false factual connotation," *Milkovich*, 497 U.S. at 20, and "rhetorical speech" that uses "loose, figurative, or hyperbolic language." *Snyder v. Phelps*, 580 F.3d 206, 220 (4th Cir. 2009), *aff'd* 562 U.S. 443 (2011).

Courts have, accordingly, been reluctant to "pick sides in … scientific debate[s]."[4] *McCullough*, 2023 WL 3075940, at *7. For instance, in *Arthur v. Offit*, a federal court dismissed

---

[4] *See, e.g.*, *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 492 (2d Cir. 2013) ("[A]s a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation."); *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) ("Scientific controversies must be settled by the methods of science rather than by the methods of litigation…. More papers, more discussion, better data, and more satisfactory models—not larger awards of damages—mark the path toward superior understanding of the world around us."); *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 564 (S.D. Tex. 2022) ("Courts do not use defamation law to decide or cut short arguments over unsettled questions of what medication best or most safely prevents or treats disease."); *Edwards v. Schwartz*, 378 F. Supp. 3d 468 (W.D. Va. 2019) (granting motion to dismiss in a case involving a scientific debate over water contamination in Flint, Michigan).

7

a complaint because the statements about which Plaintiff complained were "placed in the larger context of the public debate over systematic vaccination of children" and, thus, were not actionable. 2010 WL 883745, at *1, 5. Similarly, in *McCullough v. Gannett, Co., Inc.*, another federal court dismissed a complaint on similar grounds. 2023 WL 3075940. There, like here, a doctor sued a media organization for, among other things, characterizing his statements about COVID-19 vaccinations as misinformation.[5] *Id.* at *2–3. That court determined, *inter alia*, that the challenged statements were hyperbole and part of the public debate over COVID-19; it, consequently, found that those statements were not actionable. *See generally id.* at *6–11.

Here, all the statements at issue are part of the scientific debate over the efficacy of COVID-19 vaccines. The challenged Washington Post article examines the advocacy of Plaintiff—a "medical doctor and infectious-disease researcher" who has espoused highly-disputed views regarding COVID-19 vaccines. Dkt. 10 (Ex. A) at 2. Quoting both Plaintiff and other medical experts, *see generally id.*, the story identifies Plaintiff's position as contrary to the views articulated by government officials and many medical experts.[6] *Id.* at 3. And this critique is the centerpiece of Plaintiff's defamation claim. In short, he protests that critical statements by rival doctors[7] and the Washington Post[8] are defamatory.[9]

---

[5] "The law has long been clear that news organizations reporting and commenting on matters of public concern may do so as long as the reports and comments are 'the honest expression of opinion on matters of legitimate public interest.'" *Immanuel*, 618 F. Supp. 3d at 565 (citations omitted).

[6] Contrary to Plaintiff's assertions, it is not "abundantly clear from both the scientific and anecdotal evidence to date" that COVID-19 vaccines do not work. Dkt. 1 ¶ 15. In fact, as discussed *ante*, the evidence weighs heavily against Plaintiff.

[7] Statements 5, 6, 7, and 9.

[8] Statements 1, 2, 3, 4, 8, and 10.

[9] Significantly, as Defendant notes, Plaintiff does not dispute that courts usually decline to resolve scientific debates in defamation actions. Dkt. 18 at 7; Dkt. 17 at 17. Instead, Plaintiff points to several defamation cases involving doctors in other contexts. Dkt. 17 at 13–15. But the

But those statements are clearly about "matters of public concern"—namely, the COVID-19 pandemic and whether government-approved vaccines are effective. *Milkovich*, 497 U.S. at 20. In other words, the statements concern a scientific debate. No doubt, "Plaintiff may wish to defend in Court the credibility of [his] conclusions about the dangers of vaccines, the validity of the evidence [he] offers in support of those theories, and the policy choices that flow from those views—as well as [his] own credibility for having advanced those positions." *See Arthur*, 2010 WL 883745, at *6. But "[s]cientific controversies must be settled by the methods of science rather than by the methods of litigation." *Salter*, 22 F.3d at 736 (citation omitted).

Moreover, that Defendant's story uses strong language—such as calling Plaintiff's claims "misinformation" and "dangerous"—makes little difference. Dkt. 10 (Ex. A) at 2–3. "Media commentary can be sharp without being defamatory." *Immanuel*, 618 F. Supp. 3d at 565 (collecting cases). Plaintiff, for his part, protests that statements in the article "could be construed to either imply or state directly that plaintiff lacks integrity or is unfit for his profession." Dkt. 17 at 15. However, a fair reading of the article yields no such implication. In fact, the article describes Plaintiff as a "brilliant scientist who has a tremendous amount of experience and knowledge about vaccines." Dkt. 10 (Ex. A) at 3. At the same time, it disagrees with Plaintiff, reporting that his claims about COVID are false. Thus, the article's use of strong language is best characterized rhetorical hyperbole that the First Amendment protects. And rhetoric or hyperbole is not defamatory. *See Snyder*, 580 F.3d at 220.

---

cases he cites are inapposite to the case at hand. Those cases largely dealt with statements that could be proven true or false. *See, e.g.*, *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013) ("Whether the quality of Dr. Cashion's treatment caused or even contributed to the patient's death is an allegation of fact capable of being proven true or false..."). By contrast, the challenged statements here "are the subject of ongoing public debate and deep public interest." *Immanuel*, 618 F. Supp. 3d at 564. Plaintiff does not identify any case that allowed a defamation claim to proceed in this factual situation.

In sum, the Washington Post article at issue takes a side in a public debate over the efficacy of COVID-19 vaccines. Unhappy with what he apparently views as the Post's hyperbolic opposition to his position, Plaintiff invites the Court to settle the matter. The law, however, counsels that the Court decline Plaintiff's invitation to pick winners and losers in a scientific debate, such as that at issue here.[10] Further still, Plaintiff cannot enter a public debate and then cry foul when his views are criticized.

    *b. Defendant lacked the requisite intent to be liable for defamation.*

Even if Defendant's statements were actionable—and they are not—Plaintiff's defamation claim would still fail because he did not plausibly allege that Defendant acted with the necessary intent. Plaintiff acknowledges that he is a limited-purpose public figure. Dkt. 17 at 18 n.7. So, to state a plausible defamation claim, he must plead that the Washington Post published its defamatory statements with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

Actual malice "is a difficult [standard] for libel plaintiffs to meet." *Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980). "The actual malice standard is subjective; whether the speaker knowingly uttered a falsehood or 'in fact entertained serious doubts as to the truth of his publication' is measured by the state of mind of 'the persons … having responsibility for the publication.'" *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 273 (4th Cir. 2022) (quoting

---

[10] Defendant, like Plaintiff, invites the Court to deem its statements to be true. Dkt. 10 at 10. Again, the Court will decline the invitation, while also noting that the available evidence and FDA guidance indicates that COVID-19 vaccines are highly effective. *See United States v. Bryant*, No. 3:04-cr-00047-01, 2022 WL 1094731, at *4 (W.D. Va. Apr. 12, 2022) (noting that "although the vaccines are not 100% effective at preventing illness and death, they are still highly effective").

*Sullivan*, 376 U.S. at 287). "Recklessness is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. Rather, a plaintiff must prove that the defendant in fact entertained serious doubts as to the truth of his publication." *Fairfax v. CBS Corp.*, 2 F.4th 286, 293 (4th Cir. 2021) (citations omitted) (cleaned up). At the motion to dismiss stage, this means that a plaintiff must plead enough facts to "suggest" that a defendant "knew [its] statements were false or that they were reckless with respect to their veracity." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). "[N]aked assertion[s] devoid of further factual enhancement that a defendant has failed to observe journalistic standards, conceived a storyline in advance and sought to find evidence to confirm that story, and relied on unreliable or biased sources in researching" will not do. *Harvey*, 48 F.4th at 274 (citations omitted) (cleaned up).

     In the present case, Plaintiff insists that he sufficiently alleged actual malice, putting forward three primary arguments. First, Plaintiff claims that Defendant "abandon[ed] all journalistic standards and integrity, including WaPo's own code of ethics" by publishing the challenged story. Dkt. 1 ¶ 19(c). Second, Plaintiff contends that Defendant "relied upon" statements by unreliable sources, "including sources known to be wildly biased and to have an axe to grind against Dr. Malone." *Id.* ¶ 19(a); *see also id.* ¶ 19(b) ("WaPo manufactured the story line and coordinated the false narrative with the Biden Administration and its agents and operatives with the specific purpose to target Dr. Malone."). And finally, Plaintiff asserts that the Washington Post "knew the [challenged] Statements were false and harbored serious doubts as to the veracity of the Statements" because it knew Dr. Malone's statements were "100% factual and correct." *Id.* ¶ 19(a). Plaintiff further argues that given Plaintiff's "stature," "only a reckless person would put the Statements in circulation." *Id.*

11

Plaintiff's allegations are either irrelevant, conclusory, or false; Plaintiff, therefore, does not make out a plausible claim that Defendant acted with actual malice. Plaintiff's first argument that Defendant failed to adhere to journalistic standards misses the mark. As the Supreme Court has held, "[t]oday, there is no question that public figure libel cases are controlled by the *New York Times* standard and not by the professional standards rule…." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). In other words, "actual malice cannot be established merely by showing a departure from accepted journalistic or professional practices." *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993). Thus, Plaintiff's conclusory invocation of professional standards—even if true—is unpersuasive.

His second argument, complaining of bias and prejudice, Dkt. 1 ¶ 19(a), meets a similar fate. The Supreme Court has been clear that "[a]ctual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991) (citation omitted). So, assuming Plaintiff's claims of bias and prejudice are true, those allegations would nevertheless have little relevance to the actual malice inquiry.

Finally, Plaintiff's third argument is both conclusory and immaterial. He criticizes Defendant for rejecting Plaintiff's position that COVID vaccines are ineffective, declaring that Dr. Malone's claims are "100% factual and correct." Dkt. 1 ¶ 19(a). That claim is conclusory, and nothing more than *ipse dixit*. And the only "facts" to which he points in support of that proposition are immaterial—i.e., that (1) Defendant "intentionally ignored Dr. Malone's credentials and stature," *id.* ¶¶ 3, 19(a), and that (2) Defendant interviewed Plaintiff on "his farm in Virginia," *id.* ¶ 19(a). In any event, Defendant's article, which is incorporated by reference into Plaintiff's complaint, *see supra* note 2, expressly acknowledges Dr. Malone's impressive

12

credentials, calling him a "brilliant scientist who has a tremendous amount of experience and knowledge about vaccines." Dkt. 10 (Ex. A) at 3. It is, consequently, disingenuous to claim that Defendant ignored Plaintiff's credentials. Additionally, the article also states that Plaintiff *declined* to be interviewed by the Washington Post. *Id.* at 4. Of course, even if Defendant had interviewed Plaintiff, Plaintiff does not identify any facts which would give Defendant pause about its reporting. Plaintiff's third argument, therefore, does not make out a plausible claim of actual malice.

Indeed, the Court notes that Defendant consulted numerous reputable sources in writing the challenged story, *see generally* Dkt. 10 (Ex. A)—a fact which other courts have determined "precludes a finding of actual malice as a matter of law." *See, e.g.*, *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988); *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 862 (5th Cir. 1978). In sum, Plaintiff has not alleged facts supporting actual malice. Rather, fairly read, Defendant's story provides a thorough account of the science evaluating the efficacy of COVID-19 vaccinations.

As a result, because Plaintiff has not plausibly alleged that Defendant's defamatory statements are actionable or that Defendant acted with actual malice, the Court will dismiss Plaintiff's defamation claim.

**II.     Plaintiff's defamation by implication count likewise fails to state a plausible claim for relief.**

The Court will also dismiss Plaintiff's defamation by implication claim. A defamation by implication cause of action arises when "a plaintiff alleges that he has been defamed not by statements of fact that are literally true but by an implication arising from them…." *Webb v. Virginian-Pilot Media Companies, LLC*, 752 S.E.2d 808, 811 (Va. 2014). Important here, the First Amendment "greatly restrict[s] the common law where the defendant is a member of the

press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (citation omitted). "Where, as here, all of these considerations are present, the constitutional protection of the press reaches its apogee." *Id.* Accordingly, a plaintiff must plausibly allege that the challenged language not only imparts a "false innuendo" but also "suggest[s] that the author intends or endorses the inference."[11] *Id.* at 1092, 1093 (citation omitted).

In the present case, Plaintiff has not met this heightened pleading standard. He merely claims that the "strong gist and implication of the Statements is that Dr. Malone is intentionally dishonest, deceitful, immoral, unethical and dangerous, and that he is unfit to practice medicine;" he further posits that "WaPo carefully chose its words and purposefully misrepresented facts" by ignoring his point of view. Dkt. 1 ¶ 22–23. Both statements are conclusory, stating no facts that would make it plausible that Defendant intended or endorsed any defamatory meaning in the challenged statements. And "conclusory allegations" will not do. *Mayfield*, 674 F.3d at 378. Plaintiff has, thus, failed to meet the heightened *Chapin* standard, and as a result, the Court will dismiss his defamation by implication claim.

---

[11] Plaintiff argues that *Pendleton v. Newsome*, 772 S.E.2d 759 (Va. 2015) "expressly rejected" that a defamation by implication plaintiff must make a more rigorous showing. Dkt. 17 at 23. He is incorrect; that case is inapposite to both *Chapin* and the case at hand. As the Fourth Circuit has explained, *Pendleton* can be distinguished from *Chapin* as a "defamation case not involving public figures, issues of public concern, or [the] press." *Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 F. App'x 234, 241 (4th Cir. 2020) (unpublished opinion). Where—as here—public figures, issues of public concern, *and* the press are involved, *Chapin*'s heightened pleading standard still controls. *Id.* To hold otherwise would open any member of a heated public debate to defamation by implication liability—a result which might chill speech. The First Amendment will not permit such a result.

### III. Plaintiff's insulting words claim falls alongside his defamation claim because they are virtually co-extensive causes of action.

Originally enacted to prevent duels, *see Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987), Virginia's insulting words statute creates a private cause of action against the use of words "which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01-45. Virginia courts routinely treat an action for insulting words the same as "an action for slander or libel, for words actionable *per se*, with one exception, namely, no publication is necessary." *Carwile v. Richmond Newspapers*, 82 S.E.2d 588, 591 (Va. 1954); *W.T. Grant Co. v. Owens*, 141 S.E. 860, 863 (Va. 1928). Consequently, the Fourth Circuit has determined that defamation and insulting words claims "must ineluctably 'rise or fall together.'" *Potomac Valve & Fitting Inc.*, 829 F.2d at 1284 (citation omitted). It follows that, for the same reasons we dismissed Plaintiff's defamation claim, *see supra* pp. 5–13, the Court must also dismiss Plaintiff's insulting words claim.

### IV. Defendant is immune from liability under Virginia's Anti-SLAPP statute.

Even if Plaintiff had alleged plausible claims for relief in his complaint—and again, he has not—Defendant would still be immune from liability under Va. Code Ann. § 8.01-223.2— unofficially known as Virginia's anti-SLAPP (strategic lawsuit against public participation) statute. The purpose of an anti-SLAPP statute is "to deter lawsuits that are designed to chill speech about matters of public concern." *McCullough*, 2023 WL 3075940, at *15. It does so by "weed[ing] out and deter[ring] lawsuits brought for the improper purpose of harassing individuals who are exercising their protected right to freedom of speech." *Fairfax*, 2 F.4th at 296 (citing *Henry v. Lake Charles Am. Press, LLC.*, 566 F.3d 164, 169 (5th Cir. 2009)). Virginia's statute has two mechanisms for accomplishing this goal: (1) it grants defendants

immunity from tort liability in certain circumstances and (2) allows for the award of attorney's fees at the Court's discretion. The Court will discuss each of these mechanisms in turn.

### a. Plaintiff's claims are precluded by Virginia's anti-SLAPP statute.

Virginia's anti-SLAPP statute provides that a defendant "shall be immune from tort liability if the tort claim is based solely on statements regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States … that are communicated to a third party…."[12] *Id.* § 8.01-223.2(A) (cleaned up). This immunity, however, does not extend "to any statements that the declarant knew or should have known were false or were made with reckless disregard for whether they were false." *Id.* § 8.01-223.2(B).

Here, the immunity provided by Va. Code Ann. § 8.01-223.2 applies to the Washington Post. As explained above, the statements at issue were about COVID-19—a global pandemic—and the efficacy of COVID-19 vaccines. This topic, given its significant public health ramifications, is clearly a matter of public concern. *See supra* pp. 8–9. Moreover, as discussed previously, *see supra* pp. 10–13, Plaintiff has failed to make out a plausible claim that Defendant knew its statements were false or acted "with reckless disregard for whether [its statements] were false." Va. Code Ann. § 8.01-223.2(B). Indeed, as the Court noted earlier, *see supra* p. 13, it appears that Defendant sufficiently researched its story. Therefore, since Defendant's statements were about a matter of public concern and were not published with actual malice, anti-SLAPP immunity applies.

---

[12] Notably, Virginia amended its anti-SLAPP statute in July 2023. Va. Code. Ann. § 1-214(A). Among other changes, it broadened the reach of the statute. Previously, the statute only protected defendants against claims of business conspiracy, tortious interference, and defamation. *See Minnix v. Sinclair Television Grp., Inc.*, No. 7:23-cv-91, 2023 WL 3570955, at *7 (W.D. Va. May 19, 2023). But it has since been amended to provide immunity from "tort liability"—a change that protects a broader swath of speech. Va. Code Ann. § 8.01-223.2(A). These changes, however, have little impact on this case.

16

Plaintiff's only response is that Va. Code Ann. § 8.01-223.2 can be "overcome by virtue of … defendant's improper mental state"—a question for which he seeks "discovery and a trial by jury." Dkt. 17 at 27. But federal pleading standards do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See Iqbal*, 556 U.S. at 678–79. Plaintiff points to *Alexis v. Kamras*, No. 3:19-cv-543, 2020 WL 7090120 (E.D. Va. Dec. 3, 2020) as supporting his position. But he stretches *Kamras*—a case dealing with the issue of a defendant's mental state at the summary judgment stage—too far. First, determining that the issue of whether a defendant acted with actual malice is always a question for a jury would undermine the purpose of Virginia's anti-SLAPP statute. "It would be nonsensical to read the statute as requiring discovery and a jury trial on a question related to anti-SLAPP immunity when the very purpose of the immunity is to allow defamation defendants faced with meritless civil suits to *avoid* that discovery and trial." *McCullough*, 2023 WL 3075940, at *16. Moreover, the statutory text undercuts Plaintiff's view. Virginia's anti-SLAPP statute provides that "[a]ny person who has a suit against him *dismissed* … pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs." Va. Code Ann. § 8.01-223.2(C) (emphasis added). That language contemplates that anti-SLAPP immunity can apply at the motion to dismiss stage. So, "this court, like other courts, finds that [anti-SLAPP] immunity applies when a complaint fails to [plausibly] *plead* actual malice." *McCullough*, 2023 WL 3075940, at *16 (citations omitted).

In conclusion, Plaintiff's defamation, defamation by implication, and insulting words claims fail for the additional reason that the Washington Post is immune under Virginia's anti-SLAPP statute.

    b. *The Court will not award attorney fees to Defendant.*

Having concluded that Defendant is protected by anti-SLAPP immunity, the Court must answer the separate question of whether awarding Defendant attorney fees is appropriate in this

case.[13] Virginia's anti-SLAPP statute explains that "[a]ny person who has a suit against him dismissed … or otherwise prevails in a legal action, pursuant to the immunity provided by this section *may* be awarded reasonable attorney fees and costs." Va. Code Ann. § 8.01-223.2(C) (emphasis added). As this language indicates, "the award of attorney fees and costs under this provision is permissive." *Minnix*, 2023 WL 3570955, at *8 (citing *Fairfax*, 2 F.4th at 296–97).

Significantly, "[t]he statute does not provide any guidance for this court to follow in the exercise of its discretion," *McCullough*, 2023 WL 3075940, at *16, so the Court will look elsewhere for direction. When deciding whether to award attorney fees pursuant to the statute, other courts have examined whether the action is "frivolous, unreasonable, or without foundation[;]" whether "there is substantial basis in fact and in law for the non-prevailing party to pursue the action[;]" whether the plaintiff "acted out of an improper motive[;]" whether there is an "imbalance in resources[;]" and whether an award of fees would unfairly discourage other plaintiffs from bringing colorable claims. *Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 600–02 (E.D. Va. 2020) (collecting cases).

In this case, the above factors weigh against awarding attorney fees and costs to Defendant. The Court finds it significant that the Washington Post's resources dwarf Dr. Malone's; the Court also recognizes that there might be some risk of deterring other plaintiffs from bringing colorable claims if the Court was to award attorney fees in this case. And, just because a claim is dismissed as legally insufficient does not mean that it is frivolous. *Fairfax*, 534 F. Supp. 3d at 601. Nonetheless, the Court notes that Plaintiff has filed repeated defamation

---

[13] Defendant requests attorney's fees in its brief in support of its motion to dismiss. *See* Dkt. 10 at 36.

cases[14] and is represented by a lawyer who has sued Defendant three times in the past three years.[15] And if Plaintiff continues to bring defamation actions like those that have been dismissed, there will come a time when his lawsuits might fairly be deemed frivolous and awarding attorney fees is appropriate. However, at this point, the Court finds that the above factors do not support awarding attorney fees to Defendant.

## CONCLUSION

For the above reasons, Defendant's motion to dismiss will be granted, in an accompanying Order, to follow.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record.

Entered this  28th  day of September, 2023.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[14] *See, e.g.*, *Malone v. Twitter, Inc.*, 2022 WL 14835110 (Cal. Super. Sept. 28, 2022); *Malone v. Breggin*, No. 3:22-cv-63 (W.D. Va. Oct. 30, 2022).

[15] *See, e.g.*, *Nunes v. WP Co., LLC*, 2020 WL 2616707 (E.D. Va. May 22, 2020); *Nunes v. WP Co., LLC*, 513 F. Supp. 3d 1 (D.D.C. 2020).